515 A.2d 1358

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**PARKER WHITE METAL CO., Appellee.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**PENN IRON & METAL COMPANY, INC., Appellee.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**LIMCO, d/b/a Liberty Iron and Metal Co., Appellee.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Albert E. FUCHS, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1985.

Decided Oct. 9, 1986.

76

Keith Welks, Chief Deputy Atty. Gen., Harrisburg, for Com.

John Wolford, Erie, for Parker-White Metal Co.

Dennis G. Kuftic, Edinboro, for Albert Fuchs.

Frank L. Kroto, Michael S. Jan Janin, Erie, for Liberty Iron & Metal Co.

Joseph J. D'Alba, Philip B. Friedman, Erie, for Penn Iron & Metal Co.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA, and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN,* Justice.

In this appeal, appellees have challenged the constitutionality of certain enforcement/penalty provisions of the Solid Waste Management Act (the Act), Act of July 7, 1980, P.L.380, No. 97 §§ 101–1003, 35 P.S. §§ 6018.101—6018.-1003 (Purdon's Supp.1986). Specifically, appellees challenge sections 606(a) and 606(b) of the Act, which provide:

> (a) Any person, other than a municipal official exercising his official duties, or any municipality who violates any provision of this act, the rules and regulations of the department, or any order of the department, or any term or condition of any permit upon conviction in a *summary proceeding*, shall be sentenced to pay a fine of not less than $100 and not more than $1,000 and costs and, in default of the payment of such fines and costs, to undergo imprisonment for not more than 30 days.

> (b) Any person other than a municipal official exercising his official duties who violates any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit, shall be guilty of a *misdemeanor of the third degree* and, upon conviction, shall be sentenced to pay a fine of not less than $1,000 but not more than $25,000 per day for each violation or to imprisonment for a period of not more than one year, or both.

* This case was reassigned to this writer on June 5, 1986.

Appellees assert that, because these two provisions "proscribe identical conduct yet provide for vastly different penalties" without guidelines for the prosecutors and agencies charged with enforcing the Act as to when to seek either a summary offense conviction or a misdemeanor of the third degree conviction, the Act creates arbitrary classifications, and "vests unfettered discretion in the prosecutor," and violates, therefore, the state and federal constitutional guarantees of equal protection and due process of law and proscriptions against delegation of legislative power to the executive branch of government. We reject these challenges and uphold the constitutionality of the Act.

Following an investigation by the January 25, 1982 multi-county investigating grand-jury convened upon the application of the Attorney General of the Commonwealth, appellees were all charged in Erie County with misdemeanors of the third degree under section 606(b), 35 P.S. § 6018.606(b), for violations of the Solid Waste Management Act.[1]

Appellee Albert E. Fuchs was charged with 9 counts of dumping or permitting the dumping of hazardous wastes on the Albert Fuchs Foundry Sand site in Erie County during the period of September, 1980 through April, 1981 without a permit and contrary to the rules and regulations of the Department of Environmental Resources (DER) in violation of section 401(a), 35 P.S. § 6018.401(a), *management of hazardous waste*.[2] Originally charged with felonies for

---

1. The criminal informations were filed by the Toxic Waste Unit of the Office of the Attorney General.

2. Section 401(a) provides:

    (a) No person or municipality shall store, transport, treat, or dispose of hazardous waste within this Commonwealth unless such storage, transportation, treatment or disposal is authorized by the rules and regulations of the department; no person or municipality shall own or operate a hazardous waste storage, treatment or disposal facility unless such person or municipality has first obtained a permit for the storage, treatment and disposal of hazardous waste from the department; and, no person or municipality shall transport hazardous waste within the Commonwealth unless such person or municipality has first obtained a license for the transportation of hazardous waste from the department.

    35 P.S. § 6018.401(a).

these violations under section 606(f),[3] appellee Fuchs' charges were reduced to misdemeanors of the third degree under section 606(b) following a preliminary hearing before a District Justice.

The remaining appellees, Parker White Metal Co., Penn Iron & Metal Co., Inc. and Limco, doing business as Liberty Iron and Metal Co., were charged with misdemeanors of the third degree under section 606(b) for illegally transporting solid wastes to a facility (the Fuchs site) that had not obtained a permit from DER, and for dumping solid "residual" and/or "hazardous" wastes without a permit from DER for such dumping, in violation of sections 610(6) and (1) of the Act, 35 P.S. § 6018.610(6) and (1).[4]

Omnibus pre-trial motions were filed on behalf of all appellees which, inter alia, challenged the constitutionality of the Act. The Court of Common Pleas of Erie County granted all the appellees' pre-trial motions to dismiss the charges, finding that the challenged provisions of the Act violated Article I, section 26 and Article II, section 1 of the Pennsylvania Constitution. That court reasoned:

3. Section 606(f) provides:

> (f) Any person who stores, transports, treats or disposes of hazardous waste within the Commonwealth in violation of section 401, or in violation of any order of the department shall be guilty of a felony of the second degree and, upon conviction, shall be sentenced to pay a fine of not less than $2,500 but not more than $100,000 per day for each violation or to imprisonment for not less than two years but not more than ten years, or both.

4. The criminal informations alleged that: Limco had transported and dumped seven dumpsters of sludgy, oily "residual" waste from its industrial operations at the Fuchs site on various dates between September, 1980 and June 1981; Parker-White Metal Co. had transported and dumped some 202 fifty-five gallon drums of residual and "hazardous" wastes, including trichloroethylene (TCE) at the Fuchs site on various dates between September, 1980 and April, 1981; Penn Iron & Metal Co., Inc., had transported and dumped at least nine fifty-five gallon drums of ink and quantities of sand mixed with paint sludge, residual and hazardous wastes, at the Fuchs site on various dates between September, 1980 and March, 1981. See § 103,35 P.S. § 6018.103 for definitions of "hazardous" and "residual" wastes. That section defines "solid waste" as: "Any waste, including but not limited to, municipal, residual or hazardous wastes, including solid, liquid, semisolid or contained gaseous materials."

Since "any violation" under Sections 606(a) and 606(b) is both a summary offense and a misdemeanor of the third degree, the prosecutor is not limited in choosing whether to seek different degrees of punishment for the same acts committed under identical circumstances by similarly situated defendants, and, therefore, the penalty provisions permit discrimination between individuals without a reason legitimately and reasonably related to individual situations. (citation omitted).

This type of discrimination violates Article 1, § 26 of the Pennsylvania Constitution which forbids discrimination against any person and does not limit impermissible discrimination to that usually characterized as invidious and based on, for example, race or religion. (citation omitted).

Sections 606(a) and 606(b) also violate Article 2, Section 1 of the Pennsylvania Constitution in that the choice of a summary offense or of a misdemeanor and the penalties to be imposed are left to prosecutorial choice, which is unlimited. The Constitution provides that the legislature shall enact laws and define what constitutes a crime and shall also set the penalty for any violation of that crime. In instant case this is left to the prosecutor and violates the Constitution, since the legislature cannot delegate its authority to define a crime and/or to set the penalty for the crime.

Opinion of the Court of Common Pleas of Erie County granting appellees' motion to dismiss charges, August 29, 1984 at 4–5. The Attorney General, for the Commonwealth, has appealed from that court's determination and order.[5]

5. This Court has exclusive jurisdiction of appeals from final orders of the courts of common pleas where the lower court has declared a statute of this Commonwealth to be unconstitutional. 42 Pa.C.S.A. § 722(7). As to Parker White Metal Co., that appellee and the Commonwealth have reached a resolution and settlement of this case, and the Commonwealth has filed an "Application For Discontinuance Regarding Parker White Metal Co. Only." We will grant this application to discontinue the appeal as to appellee Parker White only.

*Presumption of Constitutionality*

There is, of course, a strong and fundamental presumption that the legislature has acted within constitutional bounds. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 58–60, 454 A.2d 937, 959 (1983), *cert. denied* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983); *American Trucking Associations, Inc. v. Scheiner*, 510 Pa. 430, 509 A.2d 838, 849 (1986); *Commonwealth v. Mikulan*, 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983). Consequently, one challenging the constitutionality of a legislative enactment bears the heavy burden of demonstrating that it clearly, plainly and palpably violates some specific mandate or prohibition of the constitution. *Id. Snider v. Thornburgh*, 496 Pa. 159, 166, 436 A.2d 593, 596 (1981).

In considering the constitutionality of the Solid Waste Management Act, we must also bear in mind that it was enacted to implement the will of the people as expressed in Article I, section 27 of the Pennsylvania Constitution, which provides:

**Natural resources and the public estate**

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Adopted May 18, 1971.

*See* section 102(10) of the Act, 35 P.S. § 6018.102(10) ("it is the purpose of this act to ... implement Article I, section 27 of the Pennsylvania Constitution....").

With these general standards to guide us and keenly aware of our role as one of the trustees of the public estate, we turn to appellees' specific constitutional challenges.

*Equal Protection*

Appellees argue that sections 606(a) and 606(b) of the Act impose "different degrees of punishment for identical statu-

tory violations," and so create arbitrary and unreasonable classifications between similarly situated persons without rational basis. Brief for Appellees at 9–10. This argument is based upon the guarantee of equal protection of the laws of the 14th Amendment to the United States Constitution[6] and upon Article I, section 26 of the Pennsylvania Constitution.[7]

This Court is, of course, at liberty to "interpret our Constitution in a more generous manner than the federal courts" have interpreted the Constitution of the United States, and we have done so in the past. *Fischer v. Department of Public Welfare (DPW)*, 509 Pa. 293, 305, 502 A.2d 114 (1985) and cases cited therein. In the equal protection area, however, we have chosen to be guided by the standards and analysis employed by the United States Supreme Court and have adopted those standards and analysis in interpreting and applying Article I, section 26 of our Constitution.[8] *Fischer v. DPW, supra*, 509 Pa. at 310, 502 A.2d at 123–124; *James v. Southeastern Pennsylvania Transportation Authority (SEPTA)*, 505 Pa. 137, 144–45, 477 A.2d 1302, 1305 (1984); *Astemborski v. Susmarski*, 502 Pa. 409, 412, 466 A.2d 1018 (1983).

**6.** Section 1 of the Fourteenth Amendment provides:
No state shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1.

**7.** Article I, Section 26 of the Pennsylvania Constitution provides:
Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

**8.** The same holds true of our related provision, Article III, section 32 which also contains equal protection guarantees for the citizens and guests of this Commonwealth. *Fischer v. Department of Public Welfare, supra*, 509 Pa. at 310, 502 A.2d at 121–123; *Commonwealth v. Hicks*, 502 Pa. 344, 348, 466 A.2d 613, 615 (1983) (under equal protection clause of fourteenth amendment and Article III, section 32, where neither "fundamental" or "important" interests at stake nor "suspect classifications" created, test is whether classification bears a rational relation to a legitimate state purpose). Neither appellees nor the lower court have, however, argued that the Act violates this provision of the Pennsylvania Constitution.

■ The equal protection analytical framework was described by this Court in *James v. SEPTA, supra,* wherein we stated:

[T]here are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test.... In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny.... Finally, in the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review.... There are, in summary, three standards of review applicable to an equal protection case, and the applicability of one rather than another will depend upon the type of right which is affected by the classification.

505 Pa. at 145, 477 A.2d at 1306 (citations omitted) (Larsen, J. dissenting as to application of this standard); *Fischer v. DPW, supra,* 509 Pa. at 306–307, 502 A.2d at 121.

However, before we analyze a statute to determine whether it violates equal protection principles, we must first ask a threshold question.

■ As appellees correctly note, the "starting point of equal protection analysis is a determination of *whether the State has created a classification* for the unequal distribution of benefits or imposition of burdens." Brief for Appellees at 9 (emphasis added). The short and sufficient answer to appellees' equal protection challenge is that sections 606(a) and 606(b) of the Act *do not create any classifications.* These provisions, on their face, apply equally and across the board to any and all potential violators of the substantive provisions of the Act. Section 606 sets forth a wide range of criminal penalties for violators of the Act,

ranging from summary offenses (with fines of $100–$1000 and imprisonment of not more than thirty days) to felonies of the first degree (with fines of $10,000–$50,000 per day per violation and imprisonment of two to twenty years). Sections 606(a) and 606(b) provide that a person or municipality who "violates any provision of this act, the rules and regulations of the department [DER], or any order of the department, or any term or condition of any permit" may, upon conviction, be found guilty of *either* a summary offense *or* a misdemeanor of the third degree, but, on their face, these provisions create no classifications. The provisions lie dormant unless and until a prosecutor or agency activates one or the other. Thus *the Act* does not, on its face, carve out classifications or single out any distinct class of persons for unequal treatment, but by its terms applies equally to all.

Any equal protection problem with arbitrary classifications can therefore arise *only upon enforcement* of the Act when the prosecutor or agency chooses to prosecute a violator under one or the other section. But that is a different issue than whether *the Act* creates classifications that may deny equal protection of the laws—that is an issue of "selective enforcement" by the prosecutor/agency. The United States Supreme Court addressed this precise issue in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), and unanimously held that an act which contained two separate penalty provisions proscribing identical conduct does not violate equal protection principles.

Presented in *Batchelder* were two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (Omnibus Act). Although not identical in every respect, both provisions prohibited convicted felons from receiving firearms, and each authorized different maximum penalties. The United States Supreme Court was asked to decide whether the statutes (1) offended due process and equal protection interests by affording excessive prosecutorial discretion, (2) were void for vagueness, or (3) constituted an

impermissible delegation of congressional authority. That Court found no constitutional infirmities:

> Contrary to the Court of Appeals' assertions, a prosecutor's discretion to choose between [the two pertinent provisions of the Omnibus Act] is not "unfettered." Selectivity in the enforcement of criminal laws is, of course, subject to constitutional restraints.[9] And a decision to proceed under [one provision rather than another] does not empower the Government to predetermine ultimate criminal sanctions. Rather, it merely enables the sentencing judge to impose a longer prison sentence than [one provision] would permit and precludes him from imposing the greater fine authorized by [that provision]. More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. (Citations omitted.) Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced.

> [9] The Equal Protection Clause prohibits selective enforcement "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Respondent does not allege that his prosecution was motivated by improper considerations.

*Id.* at 124–25, 99 S.Ct. at 2204–05.

We quite agree with the United States Supreme Court that there is no equal protection infirmity in an act merely because it allows the prosecutor or enforcing agency

to choose between two different penalty provisions for similar unlawful conduct and that the mere *possibility* that a prosecutor *might* selectively enforce the provisions of an act for improper motives does not invalidate that act. In *Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979), Justice O'Brien addressed an argument that the Juvenile Act denied equal protection because

> the statute allows for significant prosecutorial discretion in determining whether to charge a youthful offender with either murder or unlawful killing, thus allowing a prosecutor to invoke the jurisdiction of either criminal or juvenile court.
>
> As the United States Supreme Court stated, however in *Queenside Hills Co. v. Saxl*, 328 U.S. 80, 84–5, 66 S.Ct. 850, 852, 90 L.Ed. 1096 (1946): "... The ... lack of equal protection is found in the actual existence of an invidious discrimination, *not in the mere possibility that* there will be like or similar cases which will be treated more leniently." (Citations omitted.) (Emphasis added.) Instantly, appellant is able to point to no actual discrimination, and as such, his equal protection claim based on possibilities must fail. See also *Commonwealth v. Lewis*, 443 Pa. 305, 279 A.2d 26 (1971).

*Id.*, 485 Pa. at 464, 402 A.2d at 1365.[9]

So too in the instant case, appellees have not contended that the Office of the Attorney General has practiced actual discrimination against them, nor have they pointed to any similarly situated others who were singled out for more lenient treatment.

■ Were we to accept appellees' argument that the Act does operate to create distinct classifications of defendants faced with disparate treatment (summary offense versus misdemeanor of the third degree) for similar conduct, we would still decline to find the Act violative of equal protection guarantees. Such "classification" would not affect

9. Although *Wade* expressed the view of only a single justice, it subsequently received the approval of a unanimous Court in *Commonwealth v. Moyer*, 497 Pa. 643, 647 n. 3, 444 A.2d 101, 103 n. 3 (1982).

with particularity a "suspect" or a "sensitive" class, nor does it implicate "fundamental" or "important" interests.[10] Accordingly, we would evaluate the "classification" under the traditional "rational basis" test. *Commonwealth v. Hicks*, 502 Pa. 344, 347, 466 A.2d 613, 614–15 (1983); *Commonwealth v. Wade*, 485 Pa. 453, 462–64, 402 A.2d 1360 (1979). Thus we analyze the "classification created" by sections 606(a) and 606(b) "to determine whether it is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation." *Snider v. Thornburgh*, 496 Pa. 159, 168, 436 A.2d 593 (1981); *Fischer v. DPW, supra* at 509 Pa. 310–311, 502 A.2d 123; *Commonwealth v. Wade, supra*, 485 Pa. 462, 402 A.2d 1360.

To determine the object of the legislation in the instant case, we need look no further than section 102 of the Act which sets forth the findings of the General Assembly and its declaration of policy. 35 P.S. § 6018.102. That section provides, in relevant portion:

> The Legislature hereby determines, declares and finds that, *since improper and inadequate solid waste practices create public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health, safety and welfare,* it is the purpose of this act to:
>
> (1) establish and maintain *a cooperative State and local program* of planning and technical and financial assistance for comprehensive solid waste management;
>
> \* \* \* \* \* \*
>
> (3) *require permits for the operation* of municipal and residual waste processing and disposal systems, *licenses for the transportation* of hazardous waste and *permits for* hazardous waste *storage,* treatment and disposal;

10. As the United States Supreme Court noted in *Batchelder, supra,* a defendant has no right to choose the penalty scheme under which he will be sentenced. 442 U.S. at 125, 99 S.Ct. at 2205. "The defendant 'has no substantive right to a particular sentence within the range authorized by statute.'" *Commonwealth v. Wright*, 508 Pa. 25, 40, 494 A.2d 354, 362 (1985), *aff'd sub nom* — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

(4) protect the public health, safety and welfare from the short and long term dangers of transportion, processing, treatment, storage, and disposal of all wastes;

(5) *provide a flexible and effective means to implement and enforce the provisions of this act;*

\* \* \* \* \* \*

(9) provide a mechanism to establish hazardous waste facility sites;

(10) *implement Article I, section 27 of the Pennsylvania Constitution....*

As section 102(5) makes clear, a major objective of the Act, which the legislature deemed necessary to implement Article I, section 27 of the Pennsylvania Constitution and to prevent irreparable harm to the public health, safety and welfare and to avoid environmental pollution and economic loss, is to "provide a flexible and effective means to implement and enforce the provisions of this act." This flexibility in the enforcement mechanism is a critical component of the Act which grants powers of enforcement to the DER and to the county health departments and municipalities. *See* sections 104, 106, 202, 35 P.S. §§ 6018.104, .106, .202. The terms and tenor of Article VI, *Enforcement and Remedies,* illustrates that the legislature intended to weave as much flexibility as possible into the enforcement provisions of the Act. 35 P.S. §§ 6018.601–.617. Those provisions provide a wide range of civil and equitable remedies and mechanisms in addition to criminal sanctions that are available to DER, county health departments and municipalities. Moreover, the various remedies are expressly declared to be "additional and cumulative remedies ... and nothing contained in this act shall in any way abridge or alter rights of action or remedies now or hereafter existing in equity, or under the common law or statutory law, criminal or civil...." 35 P.S. § 6018.607.

It cannot be disputed that the object of this legislation— the protection of the public health, safety and welfare from the potential dangers of solid waste disposal and the implementation of Article I, section 27—is a salutary and legit-

imate object. The flexibility in enforcement procedures manifested throughout the Act, in Article VI generally and sections 606(a) and 606(b) specifically, bear a fair and substantial relation to that legitimate, indeed *compelling,* state interest. The range of specific variations of conduct prohibited by the Act is enormous and not amenable to rigid statutory classification, and it would be unreasonable to expect the legislature to have been able to identify every imaginable type of unlawful solid waste disposal and assign a carefully calibrated penalty to each. The legislature's *response to the complexity of the problem was to create a* range of civil, criminal and equitable penalties and mechanisms for the proscribed conduct and to entrust the administration of the criminal provisions of the statute to the prosecutors, i.e., the DER, county health departments and municipalities. In so doing, the legislature conferred upon the prosecutor discretion neither greater nor different than that already routinely exercised in the enforcement of other statutes imposing criminal sanctions. The election between charging a summary offense or a misdemeanor involves the exercise of no more discretion than the decision to prosecute a felony or not lodge any charges at all. As noted by the Court in *Batchelder,* the latter is a decision commonly made by prosecutors without legislative or judicial constraints.

■ It is clear, therefore, that any classification created by sections 606(a) and 606(b) of the Act has a rational basis and bears a fair and substantial relation to legitimate objects of the legislation, and does not violate equal protection principles. *See Commonwealth v. Hicks, supra* and *Commonwealth v. Wade, supra* ("We do not believe the classification is arbitrary and further believe that the classification bears a rational relationship to the objectives espoused by the Juvenile Act."). The lower court erred, therefore, in declaring sections 606(a) and 606(b) unconstitutional under Article I, § 26 of the Pennsylvania Constitution.

*Due Process*

Appellees also assert that the Act, in allowing the prosecutors "unfettered discretion" in choosing between the significantly different penalties provided in sections 606(a) and 606(b) without sufficient guidelines, violates their rights to due process of the laws because of excessive prosecutorial discretion and vagueness.[11]  We disagree.

In rejecting a due process/void for vagueness challenge to Pennsylvania's "new drunk driving law," 75 Pa.C.S.A. § 3731(a)(4), in *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983), we stated:

The touchstone of due process is protection of the individual against arbitrary action of the government. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 2975, 41 L.Ed. 935 (1974).  "As generally stated, the void-for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, [357], 103 S.Ct. 1855, [1858] 75 L.Ed.2d 903, 909 (1983).  The principle aspect of the doctrine is the requirement that legislation establish minimal guidelines to govern law enforcement for, without such minimal guidelines, a criminal statute might permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilictions." *Id.* at [358], 103 S.Ct. at 1858, 75 L.Ed.2d at 909 *quoting Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974).  In *Commonwealth v. DeFrancesco*, 481 Pa. 595, 393 A.2d 321 (1978), this Court applied the above principles to uphold a disorderly conduct/refusal to dis-

---

**11.** Where it is alleged that a statute fails to provide sufficient guidelines to limit a prosecutor's discretion in enforcing the statute, there is frequently much overlap between the various constitutional challenges that are typical in such cases, i.e., equal protection, due process/vagueness, and improper delegation. *See, e.g., United States v. Batchelder, supra.* Accordingly, much of what we discuss regarding each of these specific challenges will be relevant and applicable to the others.

perse statute, 18 Pa.C.S.A. § 5502, against a due process/vagueness challenge, and identified the "root of the vagueness doctrine" as a

> "rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited...."

481 Pa. at 608, 393 A.2d 321 *quoting Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

> Similarly in *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976), we held that a penal statute "must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction." 467 Pa. at 5, 354 A.2d 244. However, statutes alleged to be vague are not "to be tested against paradigms of draftmanship. Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct." *Id.*, 467 Pa. at 6, 354 A.2d 244.

*Id.*, 504 Pa. at 251–52, 470 A.2d at 1342–43.

The United States Supreme Court in *Batchelder* similarly stated:

> [V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. (Citations omitted).

> The provisions in issue here, however, unambiguously specify the activity proscribed and the penalties available upon conviction. ... *That this particular conduct may violate both Titles does not detract from the notice afforded by each.* Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, *they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping*

*criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.*

442 U.S. at 123, 99 S.Ct. at 2204 (emphasis added).

■ We adopt this reasoning of *Batchelder* regarding the clear notice provided by the Act by a single statute unambiguously identifying the conduct proscribed and the range of penalties available upon conviction. Indeed, this Court has consistently upheld, against due process challenges, the authority of a prosecutor to choose between procedures and sentencing alternatives. *See, e.g., Commonwealth v. Zettlemoyer, supra* (acknowledging legitimacy of prosecutor's discretion as to whether to charge first degree murder and whether to seek death penalty); *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354, 361–62 (1985) *aff'd sub nom* —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (defendant has no right to particular sentence within the range authorized by statute, and prosecutor's discretion as to whether to invoke the mandatory sentencing procedure under 42 Pa.C. S.A. § 9712 is legitimate; "We perceive no distinction between such an exercise of discretion and the prosecutorial discretion exercised at any other stage of the criminal prosecution."); *Brunwasser v. Fields,* 487 Pa. 283, 409 A.2d 352 (1979) (upholding prosecutor's discretion as to whether to seek forfeiture or prosecution of candidate or public official under the Election Code); *Commonwealth v. Wade, supra* (upholding prosecutor's discretion as to whether to prosecute defendant in a juvenile proceeding or as an adult offender).

In *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985), this Court upheld the prosecutor's discretion to decide whether or not to recommend a defendant who has been charged with drunken driving for the Accelerated Rehabilitative Disposition (ARD) program stating:

> [T]he decision to submit the case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without doubt *un-*

*related* to the protection of society and/or the likelihood of a person's success in rehabilitation, such as race, religion or other such obviously prohibited considerations, the attorney for the Commonwealth must be free to submit a case or not submit it for ARD consideration based on his view of what is most beneficial for society and the offender. *Compare Shade v. Commonwealth of Pennsylvania Department of Transportation,* 394 F.Supp. 1237, 1242 (M.D.Pa.1975), citing *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

*Id.* at 508 Pa. 310, 495 A.2d 934–35.

■ In light of the foregoing principles, it should be obvious that sections 606(a) and 606(b) of the Act do not offend due process in allowing the prosecutor or agency to choose between ranges of penalties nor in failing to provide precise standards narrowing the prosecutorial discretion to so choose. Appellees were *fully* informed by the terms of the Act of exactly what conduct was proscribed as well as the full range of civil, criminal and equitable remedies and penalties to which they might be subjected for violating a substantive provision of the Act. It is of no constitutional significance that appellees were not advised in advance as to which of the two applicable penalty ranges the prosecutor or agency would choose to prosecute them under for their violations (alleged) of the Act, for a defendant has no right to a particular sentence within the range authorized by statute. *Commonwealth v. Wright, supra; United States v. Batchelder, supra.* Moreover, while sections 606(a) and 606(b) of the Act authorize the prosecutor or agency to choose from between two *possible* ranges of penalties, conviction and punishment is not automatic. The prosecutor or agency must prove its case to the satisfaction of the judge, jury or district justice in order to obtain a conviction for either a summary offense or a misdemeanor. Following conviction, the sentencing authority, not the prosecutor or agency, must set the sentence within the ranges established by either section 606(a) (fine of $100–$1000, and imprisonment of not more than thirty days) or section 606(b)

(fine of $1,000–$25,000, and imprisonment of not more than one year).

We hold therefore that the decision of whether to prosecute an alleged offender under sections 606(a) or 606(b) is a matter legitimately committed to the sound discretion of the prosecutor or agency charged with enforcement of the Act, that the Act provides clear notice to all as to the conduct proscribed and the possible penalties for its violation, and that it does not offend due process.

*Improper Delegation of Legislative Powers*

The lower court also held that sections 606(a) and 606(b) violated Article II, section 1 of the Pennsylvania Constitution.[12] That court reasoned that the legislature improperly delegated its authority to define "what constitutes a crime" and to "set the penalty for the crime." Lower court slip op. at 5.

From what we have stated in the preceding sections, it is apparent that the legislature has delegated *none* of its authority to the prosecutors and agencies. Quite to the contrary, the Act specifically and unambiguously establishes "what constitutes a crime," and specifically and unambiguously establishes the full range of penalties possible for commission of those crimes. That the legislature has allowed the prosecutor some discretion and much flexibility in choosing from among the full panoply of civil, criminal and equitable remedies does not delegate any of the legislative power or function to the executive branch.

■ The Commonwealth Court has correctly rejected a "non-delegation" challenge to those portions of the Act delegating enforcement authority to the counties, holding:

Although Article I, section I of the Pennsylvania Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibit delegation of the legislative function, the legislature may

12. Article II, section 1 provides: "The legislative powers of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

confer authority and discretion upon another body in connection with the execution of a law. Where the legislature sets primary standards, it may impose the duty to carry out the legislative policy on another governmental unit.... However, such a grant of authority "must contain adequate standards to guide and restrain the exercise of the delegated administrative function. In determining whether adequate standards have been established, we are not limited to the letter of the law. We must look, as well, to the underlying purpose of the statute and to its reasonable effect." ...

*Chambers Development Co., Inc. v. Commonwealth, ex rel. Allegheny County Health Department*, 81 Pa.Cmwlth. 622, 474 A.2d 728, 731–32 (1984) (citations omitted). That court concluded that the Act was quite specific both as to the policies sought to be advanced and as to its administration and enforcement and so concluded that the Act did not delegate legislative powers and authority to the prosecutors. That holding was squarely in line with this Court's decisions under Article II, section 1 wherein legislative enactments were challenged as improper delegations of legislative authority. *See, e.g., Commonwealth v. Cherney*, 454 Pa. 285, 289–90, 312 A.2d 38 (1973) *and Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 10–12, 331 A.2d 198 (1975). As the United States Supreme Court has stated, the "provisions of the Omnibus Act at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose. In light of that specificity, the power that [the legislature] has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws." *United States v. Batchelder, supra* at 442 U.S. 126, 99 S.Ct. at 2205.

For the foregoing reasons, we hold that the legislature has not improperly delegated its authority under Article II, section 1, and we reverse the trial court's decision to the contrary.

In declaring sections 606(a) and 606(b) of the Solid Waste Management Act unconstitutional, the lower court has giv-

en little, if any, consideration to the strong and fundamental presumption of constitutionality that must attend judicial review of a legislative enactment. That presumption is further strengthened in this case by the explicit purpose of the Act to implement Article I, section 27 of the Pennsylvania Constitution, a remarkable document expressing our citizens' entitlement and "right to clean air, pure water, and—to the preservation of the natural, scenic, historic and esthetic values of the environment." The courts of this Commonwealth, as part of a co-equal branch of government, serve as "trustees" of "Pennsylvania's public natural resources," no less than do the executive and legislative branches of government.

The legislature has enacted a comprehensive, flexible and effective piece of legislation in the Solid Waste Management Act, designed to protect the people and the environment from "improper and inadequate solid waste practices [which create] public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health, safety and welfare...." Section 102, 35 P.S. § 6018.102. The legislature has reposed in the executive branch (DER, county health departments and municipalities) broad powers of and responsibilities for enforcement and has given the prosecutors a vast array of legal mechanisms with which to battle the tide of pollution and environmental catastrophe that has accompanied man's "progress" toward a highly mechanized, industrial and disposable society. And, the legislature has instructed the courts that the "terms and provisions of [the Solid Waste Management Act] are to be liberally construed, so as to best achieve and effectuate the goals and purposes hereof." Section 901, 35 P.S. § 6018.901. As one of the trustees of the public estate and this Commonwealth's natural resources, we share the duty and obligation to protect and foster the environmental well-being of the Commonwealth of Pennsylvania. Failure to act with vigilance "so as best to achieve and effectuate the goals and purposes" of the Solid Waste Management Act would be detrimental to the public health, safety and

welfare, and would be a breach of the public trust. There-fore, we uphold the validity of sections 606(a) and 606(b) of the Act and the authority of the Office of the Attorney General to prosecute appellees for misdemeanors of the third degree for their alleged violation of that Act.

*Remaining Issues*

In their omnibus pre-trial motions, appellees also sought dismissal of the charges on the alternate grounds that the January 25, 1982 multi-county investigating grand jury was not authorized to investigate alleged illegal dumping of solid waste within Erie County, and that the Act was unconstitutional for imposing criminal liability without crim-inal intent or "mens rea." The lower court did not address or resolve these issues, given its dismissal of the charges for the reasons discussed above.[13]

Appellees' reiterate these arguments on appeal, asking this Court to affirm the lower court on either of these two alternate bases. The Commonwealth has filed an "Applica-tion For Relief: Motion to Strike," asking this Court to strike appellees' second and third arguments concerning these issues. While we see no need to formally grant the Commonwealth's Motion to Strike, we agree with the Com-monwealth that it would be premature to decide these issues at this time and that it is necessary to remand these matters for resolution in the lower court. We note, how-ever, that the Commonwealth may, indeed, attempt at trial to establish criminal intent and that the lower court will be guided in its determination of the requisite degree of culpa-bility by the terms of the Act and by chapter 3 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. §§ 301–315, Culpa-bility.[14]

---

**13.** The lower court did make passing comment on the harshness of imposing severe penalties "on an absolute liability basis," but did not specifically address this argument. Lower court slip op. at 3–4.

**14.** Chapter 3 of the Crimes Code sets forth the general and "minimum requirements of culpability," 18 Pa.C.S.A. § 302(a), and also sets forth "limitations on scope of culpability requirements." 18 Pa.C.S.A. § 305. Section 305 provides that, when a conviction is predicated on absolute liability (without culpability), "the offense constitutes a sum-

For the foregoing reasons:

The order of the Court of Common Pleas of Erie County entered August 29, 1984 at Nos. 437, 452, 455 and 494 of 1984 is reversed and the case is remanded for further proceedings consistent with this opinion; and

The Commonwealth's "Application For Relief: Motion to Strike" is denied.

Additionally, we grant the Commonwealth's "Application For Discontinuance Regarding Parker White Metal Co. Only," pursuant to Pa.R.A.P. Rules 123 and 1973.[15]

It is so ordered.

FLAHERTY and McDERMOTT, JJ., join this opinion.

HUTCHINSON, J., joins this opinion except for that portion of the opinion discussing an intermediate equal protection standard of review, and he also files a concurring opinion.

ZAPPALA, J., concurs in the result.

PAPADAKOS, J., files a dissenting opinion, joined by NIX, C.J.

HUTCHINSON, Justice, concurring.

I concur in the result. I have no quarrel with the majority's analysis of the equal protection problem under the rational basis standard. I see no reason, however, to discuss and suggest that a three-tiered equal protection analysis is necessary. At 84. Although I joined the majority opinions in *Fischer v. Department of Public Welfare*, 509 Pa. 293, 502 A.2d 114 (1985) and *Pennsylvania Liquor Control Board v. Spa Athletic Club*, 506 Pa. 364, 485 A.2d 732 (1984), which contained similar dictum, I have

---

mary offense" only, but that "although absolute liability is imposed by law ... defined by a statute other than this title, the culpable commission of the offense may be charged and proved ... in which event negligence ... constitutes sufficient culpability." 18 Pa.C.S.A. § 305(b)(1) and (2). *See also* 18 Pa.C.S.A. § 106 *and Commonwealth v. Mikulan, supra.*

15. *See* note 5, *supra.*

now concluded that it is unwise to imply acceptance of the three-tiered analysis unless or until the issue is squarely presented. *See Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983).

Some commentators have suggested that the decisions of the United States Supreme Court imply acceptance of an intermediate level of review for equal protection cases involving an important right or sensitive classification. Nevertheless, that Court itself has not expressly adopted the intermediate standard or three-tiered analysis except in cases involving gender based classifications. J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 592–98 (2d ed. 1983). Absent an express adoption of this analysis and standard for federal constitutional purposes, I do not believe we should imply its adoption or consider it unless necessary to decide a particular case. Here it is no more necessary to the majority opinion than it was in *Fischer, Pennsylvania Liquor Control Board* and *Martin.* The majority correctly decides the case by applying the rational basis standard. I, therefore, join its reasoning, but disassociate myself from what I believe is unnecessary dictum concerning the general existence of three categories in analyzing equal protection cases.

PAPADAKOS, Justice, dissenting.

I dissent from the Majority's conclusion that two statutory provisions which proscribe the identical conduct, but prescribe two different penalties without drawing any distinction for when either penalty is constitutional.

Albert E. Fuchs, Parker White Metal Co.,[1] Penn Iron and Metal Co., Inc., and Limco, d/b/a Liberty Iron and Metal Co. (Appellees), were all charged with the commission of third degree misdemeanors under Section 606(b) of the Solid Waste Management Act.[2] Albert E. Fuchs was charged

1. Appellee Parker White Metal Co. has applied for a discontinuance of its appeal in this matter as to it.

2. Act of July 7, P.L. 1980, No. 97, § 101, et seq., 35 P.S. § 6018.101, et seq.

with dumping non-hazardous solid waste without a permit under 35 P.S. § 6018.610(1)[3] and the other Appellees were charged with transporting non-hazardous solid waste to an unlicensed facility under 35 P.S. § 6018.610(6).[4]

Appellees filed omnibus pre-trial motions with the Honorable James B. Dwyer, President Judge of the Court of Common Pleas of Erie County, seeking to dismiss the charges against them because, inter alia, Section 606 of the Solid Waste Management Act (35 P.S. § 6018.606) is constitutionally vague. The trial court agreed with Appellees and dismissed the charges against them. The Commonwealth appealed that decision to the Commonwealth Court which, by its order of May 17, 1985, transferred the appeal to this Court pursuant to 42 Pa.C.S. § 722 which vests jurisdiction in this Court of appeals from final orders where the common pleas court holds a statute constitutionally infirm.

The Commonwealth argues, as it did before the trial court, that the provisions of § 606(a) and (b) of the Solid Waste Management Act proscribe the same conduct in two sections and provide two different punishments, leaving to the prosecutor for the Commonwealth absolute discretion to choose which penalty section should be invoked, and that depositing such discretion in the Commonwealth does not offend federal or state constitutional liberties.

3. 35 P.S. § 6018.610(1) provides:
It shall be unlawful for any person or municipality to:
(1) Dump or deposit, or permit the dumping or depositing, of any solid waste onto the surface of the ground or underground or into the waters of the Commonwealth, by any means, unless a permit for the dumping of such solid wastes has been obtained from the department; provided, the Environmental Quality Board may by regulation exempt certain activities associated with normal farming operations as defined by this Act from such permit requirements.

4. 35 P.S. § 6018.610(6) provides that it is illegal to:
(6) Transport or permit the transportation of any solid waste to any storage, treatment, processing or disposal facility or area unless such facility or area possesses a permit issued by the department to accept such wastes, or contrary to the rules or regulations adopted under this act, or orders of the department, or in such a manner as to adversely affect or endanger the public health, safety and welfare or environment through which such transportation occurs.

Appellees argue, on the other hand, that any statute that proscribes identical conduct and punishes with different penalties, without distinguishing when each penalty is applicable, offends the Equal Protection and Due Process Clauses of the State and Federal Constitutions. Because I find Appellees' arguments persuasive, I dissent from the Majority's contrary conclusions which uphold the constitutionality of the statutory provisions *sub judice*.

## I

The provisions with which Appellees were charged, 35 P.S. § 6018.606(b), and the preceding section, 35 P.S. § 6018.606(a), read in pertinent part:

§ 6018.606.  *Criminal penalties*

(a) Any person, other than a municipal official exercising his official duties, or any municipality who violates any provision of this act, the rules and regulations of the department, or any order of the department, or any term or condition of any permit upon conviction thereof in a summary proceeding, shall be sentenced to pay a fine of not less than $100 and not more than $1,000 and costs and, in default of the payment of such fine and costs, to undergo imprisonment for not more than 30 days.

(b) Any person other than a municipal official exercising his official duties who violates any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit, shall be guilty of a misdemeanor of the third degree and, upon conviction, shall be sentenced to pay a fine of not less than $1,000 but not more than $25,000 per day for each violation or to imprisonment for a period of not more than one year, or both.

As can be seen, both sections make any violation of the Solid Waste Management Act a crime. Violations of Section 606(a) are summary offenses and can be punished by a fine of not less than $100 and not more than $1,000 plus costs. Violations of Section 606(b) are classified as misdemeanors of the third degree and are punishable by fines of

$1,000 to $25,000 *per day* for each violation or imprisonment for up to one year or both. From the very terms of the statute, it is obvious that the same conduct can be both a summary offense and a third degree misdemeanor, without distinction. The inquiry raised by such a statutory scheme is whether the legislature has the power to draft a criminal statute that treats similarly situated individuals differently for no apparent reason.

## II

It is recognized that the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes. The legislature also has the sole power to classify crimes and designate the procedure at trial and after sentence. Article II, § 1, Pennsylvania Constitution; *Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985); *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Glover*, 397 Pa. 543, 156 A.2d 114 (1959); *Commonwealth v. Cano*, 389 Pa. 639, 133 A.2d 800 (1957); *Commonwealth v. Sweeney*, 281 Pa. 550, 127 A. 226 (1924); *Commonwealth v. Kalck*, 239 Pa. 533, 87 A. 61 (1913).

The legislative power of classification necessarily flows from the general power to enact regulations for the health, welfare and safety of the community. *Harris v. State Board of Optometrical Examiners*, 287 Pa. 531, 135 A. 237 (1926).

Statutory classifications, however, must conform to the provisions of the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution and our similar Article III, Section 32, constitutional guarantees. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 67 n. 13, 436 A.2d 147, 155 n. 13 (1981) [5].

5. The Federal Equal Protection Clause of the Fourteenth Amendment to the Constitution, in pertinent part, provides:
    No state shall ... deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
    Article III, Section 32, of the Pennsylvania Constitution provides:

The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike. *James v. SEPTA,* 505 Pa. 137, 477 A.2d 1302 (1984); *Commonwealth v. Kramer,* 474 Pa. 341, 378 A.2d 824 (1977); *Commonwealth v. Webster,* 462 Pa. 125, 337 A.2d 914 (1975); *Moyer v. Phillips,* 462 Pa. 395, 341 A.2d 441 (1975); *Baltimore & Ohio R. Co. v. Commonwealth, Dept. of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975); *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) quoting *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920); *Harris v. State Board of Optometrical Examiners,* 287 Pa. 531, 135 A. 237 (1926); *Commonwealth v. Sweeney,* 281 Pa. 551, 127 A. 226 (1924).

Under a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test. *Singer v. Sheppard,* [464 Pa. 387, 346 A.2d 897 (1975)], (citation omitted). In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Finally, in the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a height-

The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law.

These sections have been construed to be in purpose and meaning sufficiently similar to warrant like treatment. *Laudenberger; Baltimore & Ohio R. Co. v. Comm. Dept. of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975); *Moyer v. Phillips,* 462 Pa. 395, 341 A.2d 441 (1975); *Kroger Co. v. O'Hara Twp.,* 481 Pa. 101, 392 A.2d 266 (1978).

ened standard of review. *U.S. Dept. of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767, 775 (1973) (concurring opinion of Mr. Justice Marshall), citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). There are, in summary, three standards of review applicable to an equal protection case, and the applicability of one rather than another will depend upon the type of right which is affected by the classification. *James* [505 Pa.] at 145, 477 A.2d at 1305–1306.

First, I disagree with the Majority's conclusion that Sections 606(a) and 606(b) do not create any classifications (Majority Opinion, 84). Quite to the contrary, both sections classify *conduct* and then unequally impose burdens for violations of that conduct. No party alleges that Appellees have been denied a fundamental or important right and, therefore, I would review this statute under the rational basis test which requires the sustaining of the classification unless it is patently arbitrary and bears no rational relationship to a legitimate government interest. *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); *James; Singer v. Sheppard*, 464 Pa. 387, 402, 346 A.2d 897, 904–905 (1975).

### III

Applying the "rational basis" test, my review reveals that this statutory classification is both patently arbitrary and bears no rational relationship to a legitimate government interest.

Where the legislature considers an offense created of a petty nature or of a lesser gravity than an indictable offense, it exercises a legitimate government interest in providing that the act be prosecuted as a summary proceeding. Similarly, where the legislature indicates its intent that an offense is of a greater nature or harm to society, it may provide that the act shall be prosecuted as a misdemeanor or felony. The statutory classifications under consideration here, however, do not relate to the government

interest of defining and classifying crimes because the legislature indicates that the same conduct can be of a petty nature and, at the same time, be of a greater severity. This is not legal classification, it is legal chaos. (See, *Bell v. Alaska,* 598 P.2d 908 (Alaska, 1979)).

On its face, Sections 606(a) and (b) treat persons within the same defined classification unequally for no rational reason. The same identical conduct, under the same circumstances, may constitute a summary offense when committed by one person and a misdemeanor when committed by another. Strictly speaking, the statute categorizes punishments, but does not delineate the circumstance to which the diverse punishments are to be applied. Such unequal punishments for the identical conduct is patently arbitrary because the punishment clauses, being different, are irreconcilable and create a standardness application.[6]

By prescribing different penalties for the identical conduct, the accused is irrationally discriminated against because no even-handed application of the law by law enforcement officials, prosecutors or the courts can be assured in the adjudicatory and sentencing processes.

The statutory scheme also violates the purpose sections of § 104(3), (4) and (5) of our Crimes Code, which are applicable when reviewing all criminal statutory proscriptions (18 Pa.C.S. § 107(a)), and which the Majority conveniently has ignored.

Among the purposes of all criminal legislation is: 1) to safeguard offenders against excessive, disproportionate or arbitrary punishment (18 Pa.C.S. § 104(3)); 2) to give fair warning of the nature of the conduct declared to constitute an offense and of the sentences that may be imposed on

---

6. Similar logic has been applied by our sister states when considering multiple penalty legislation for the same act. *State v. Chavez,* 77 N.M. 79, 419 P.2d 456 (1966); *Spillers v. State,* 84 Nev. 23, 436 P.2d 18 (1968); *State v. Shondel,* 22 Utah 2d. 343, 453 P.2d 146 (1969); *State v. Rentfrow,* 552 P.2d 202, 15 Wash.App. 837, 552 P.2d 202 (1976); *Bell v. State,* 598 P.2d 908 (1979) Alaska; *Palmore v. U.S.,* 290 A.2d 573 (1972) (DC Appeal); *State v. Modica,* 58 Hawaii 249, 567 P.2d 420 (1977); *People v. Marcy,* 628 P.2d 69 (1981 Colorado).

conviction of an offense (18 Pa.C.S. § 104(4)); and 3) to differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization of their treatment (18 Pa. C.S. § 104(5)).

By imposing different penalties for the same conduct, a safeguard against excessive, disproportionate or arbitrary punishment, is not provided for because similarly situated offenders are not guaranteed like treatment by the law.

Secondly, because the same conduct is classified as two offenses with two vastly different punishment schemes, fair warning is not given to offenders of the nature of the conduct declared to be an offense. It is impossible to know before being charged whether the act committed will be a misdemeanor or summary offense. Thirdly, no differentiation is made on any grounds between the classifications created by the legislation and, consequently, serious and minor offenses are not distinguished and offenders cannot be assured of just individualization of treatment by the courts.

Since the classifications of 35 Pa. 6018.606(a) and (b) have no reasonable relationship to the persons involved or the public purpose to be achieved, I find them to be arbitrary and would not let them stand.

I find inappropriate to a disposition of the issues raised by this case the Majority's gratuitous comments concerning its perceived roles as one of the trustees of the public estate (Majority Opinion, pp. 82, 82–88, 96–107). As I see the matter, our duty in this case has little to do with the court's conservation and maintenance of clean Commonwealth streams, but has everything to do with ascertaining whether legislative enactments are being drawn in such a manner as to protect all the rights guaranteed all the people of the Commonwealth by our Bill of Rights.

I also find the Majority's heavy reliance on *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), to be misplaced. That case concerned two over-

lapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968. The United States Supreme Court held that the provisions in question "unambiguously specif[ied] the activity proscribed and the penalties available upon conviction." 442 U.S. at 123, 99 S.Ct. at 2204, 60 L.Ed.2d at 764. The Court held that Congress intended to enact two independent gun control statutes, each fully enforceable on its own terms.

Conversely, our legislature, in one statute, has designated that a single violation of one statute can be two crimes. On this basis alone, *Batchelder* is inapplicable. There is no designation as to what conduct will bring an actor under the minimal penalty of Section 606(a) or the more stringent provisions of Section 606(b).

There is cited by the Majority dictum from *Batchelder* that theorizes that:

> Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

442 U.S. at 123, 99 S.Ct. at 2204,

The Majority cites this dictum to support its conclusion that due process requirements are satisfied in the case *sub judice* where the statute under review "unambiguously" identifies the conduct proscribed and the range of penalties available upon conviction.

The requirement for clearly defined criminal provisions is not satisfied by declaring that *any* violation of *any* section of a complicated multi-chaptered statute is a crime which can be prosecuted as either a summary offense or misdemeanor. Nor is such sloppy legislative drafting justified to me under the Majority's rationale that the legislature could in no clearer way arm our enforcement officers against the threat of pollution and environmental catastrophe that has

accompanied man's "progress toward a highly mechanized, industrial and disposable society" (Majority Opinion, p. 96).

Our holding in *Commonwealth v. Heinbaugh*, 467 Pa. 1, 5, 354 A.2d 244, 246 (1977), is particularly instructive here:

> That ... the terms of a penal statute creating a new offense must be sufficiently implicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process.

Quoting *Connolly v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 332, 328 (1926).

I also cannot agree with the Majority in its conclusion that "it would be unreasonable to expect the legislature to have been able to identify every imaginable type of solid waste disposal and assign a carefully calebrated penalty to each" (p. 90). Somehow, our legislature enacted a comprehensive Crimes Code, Liquor Code, and Motor Vehicle Code and in each Code took great care to distinguish between minor and serious violations of the public peace and to assign carefully tailored penalties for each violation. I expect no less from our legislature in dealing with polluters of our public resources and dissent from the Majority's contrary conclusion.

I also find unpersuasive the Majority's arguments that a duplicative statute that provides for two penalties for the same conduct merely transfers to the prosecutor the decision of whether the offense should be prosecuted as a misdemeanor or a summary offense, and that such a delegation of discretion is constitutionally permissible. The decision to charge and prosecute an individual is certainly within the prosecutor's discretion. In the way these sections are drafted, however, the district attorney is permitted to pre-determine the penalty applicable by charging under

Section 606(a) or 606(b).[7] In chosing to prosecute under either of those sections, *he* must weigh the severity of the actions and charges against the individual and determine whether, to *his* mind, the alleged violations are petty, minor or serious. Only the legislature has the constitutional power to specify and define the offense and prescribe the procedure of prosecution to be utilized, because only the legislature can weigh the severity of the offense. That is a legislative judgment with which the executive and judiciary are powerless to interfere.

The conclusion reached here can also be distinguished from *Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985), where this Court concluded that the mandatory minimum sentencing guidelines of 42 Pa.C.S. § 9712[8] do

7. See p. 93 of the Majority Opinion where it is assumed that the sentencing authority somehow can sentence an offender prosecuted under one section, say 606(a), using the provisions of 606(b), or vice versa. There is no support for this proposition under a reading of the statute, *but* there was such an assumption in the statutes involved in *Batchelder* which is another reason why I find *Batchelder* inapposite to this case.

8. Section 9712 entitled "Sentences for offenses committed with fire-arms," provides as follows:

(a) Mandatory sentence.—Any person who is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to aggravated assault) or kidnapping, or who is convicted of attempt to commit any of these crimes, shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provisions of this title or other statute to the contrary.

(b) Proof of sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

(c) Authority of court in sentencing.—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or

not violate the separation of powers principle by vesting discretion in the prosecutor to invoke the mandatory sentencing procedure. In *Wright*, the Court reviewed a sentencing scheme where, upon conviction of certain clearly delineated first and second degree felonies, the prosecutor could elect to have the defendant sentenced to a minimum five-year term of imprisonment. The minimum penalty provision can only be invoked if the defendant is convicted of specified crimes while visibly in possession of a firearm.

The five-year minimum sentencing provision did not vest unauthorized discretion in the prosecutor, especially since: 1) the provision can only be invoked if the defendant is convicted of specifically enumerated felonies; 2) the maximum penalties for the applicable first and second degree felonies range from ten to twenty years, well over the prescribed minimum; and 3) the provision can only be invoked under the specific aggravating circumstance of committing the crime while brandishing a weapon and is applied under a controlled review scheme. The trial court is given discretion on whether Section 9712 is applicable, the Commonwealth and the defendant may submit evidence in favor or against the imposition of the minimum penalty and the court's decision is reviewable.

In contrast, none of these safeguards against arbitrary applications are present in this statutory scheme. There is

to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

(d) Appeal by Commonwealth.—If a sentencing court refused to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

(e) Definition of firearm.—As used in this section "firearm" means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein. 42 Pa.C.S. § 9712.

no special criterion which separates the applicability of § 606(a) from § 606(b); no review mechanism is afforded to determine whether § 606(a) or (b) is properly imposed and the range of imposable penalties depends only on whether the prosecutor decides to prosecute the matter as a summary offense or misdemeanor and not on whether some aggravating circumstance statutorily prescribed is present.

For all of the above reasons, I conclude that 35 P.S. § 6018.606(a) and (b) treat similarly situated individuals unequally for no reason, and that, consequently, these provisions are unconstitutionally infirm. Accordingly, I would affirm the Order of the Court of Common Pleas of Erie County.

NIX, C.J., joins this dissenting opinion.