631 A.2d 1076

**Andrew BLANCO, Petitioner,**

v.

**STATE BOARD OF PRIVATE LICENSED
SCHOOLS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 18, 1992.

Decided Sept. 13, 1993.

Andrew B. Blanco, petitioner, pro se.

Ernest N. Helling, for respondent.

Before DOYLE, COLINS and KELLEY, JJ.

DOYLE, Judge.

This is a case of first impression involving the authority and responsibility of the State Board of Private Licensed Schools (Board). The Board is an administrative board within the Pennsylvania Department of Education created by the Private Licensed Schools Act (Act), Act of December 15, 1986, P.L. 1585, *as amended,* 24 P.S. §§ 6501–6518.[1] Andrew Blanco,

---

1. The scope of the Board's powers and duties is as follows:

 The board shall have the power and its duty shall be to approve or disapprove the initial and renewal licensure or registry, or both, of schools; to suspend or revoke the licensure or registry, or both, of schools; to approve or disapprove the licensing of in-State and out-of-State admissions representatives; to establish qualifications for instructors, administrators and supervisors; to adopt broad policies and principles; and to establish standards, rules and regulations....
 Section 4(a) of the Act, 24 P.S. § 6504(a).

owner and operator of the Professional Bartenders Training Center, has appealed a determination of the Board that his center is subject to the licensing requirements of the Act. We reverse.

On April 29, 30 and May 2, 1991, Blanco placed advertisements in various newspapers stating that a bartender training class was to be conducted on May 13, 1991, in a hotel in Bloomsburg, Pennsylvania. A Board member enrolled in and attended the May 13 session of Blanco's bartender training class. After the member made a report to the Board, the Board concluded that Blanco should obtain a license for the continued operation of his center.

By letters dated May 16 and July 3, 1991, the Board wrote to Blanco in an effort to have him apply for a license. Blanco refused. The Board then issued a Notice of Unlicensed Activity and a hearing was held on November 8, 1991, before a hearing panel. The panel prepared proposed findings of fact and recommendations that were submitted to the Board on February 26, 1992. Although given the opportunity to address the full Board, Blanco did not attend the hearing. On April 26, 1992, the Board issued an adjudication and order [2] that found that Blanco committed a first violation of the Act, and while imposing no penalty, ordered that he cease and desist from advertising and conducting his classes unless and until he obtained a license.

Under Section 2 of the Act, the Board's power to license is limited to "private licensed schools" which term is defined as:

**2.** Section 702 of the Administrative Agency Law (Law), 2 Pa.C.S. § 702, provides that any person who is aggrieved by an "adjudication" of a Commonwealth agency shall have the right to appeal therefrom. Section 101 of the Law, 2 Pa.C.S. § 101, defines "adjudication" as "[a]ny final order, decree, decision, determination or ruling. . . ." *See LPG Construction Co., Inc. v. Commonwealth, Department of Transportation,* 93 Pa.Commonwealth Ct. 474, 501 A.2d 360 (1985). Administrative actions are adjudicatory in character when they culminate in a final determination affecting personal or property rights. *Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission,* 501 Pa. 71, 459 A.2d 1218 (1983).

A school or classes operated for profit or tuition that provides resident instruction to prepare an individual to pursue an occupation in the skilled trades, industry or business, or systematic instruction by correspondence or by telecommunication in a field of study. . . .

24 P.S. § 6502. If a school or classes are operated for profit within this definition then, in order to operate in the Commonwealth, it must be licensed via certain general procedures established by the Board. *See, e.g.,* Section 4(a) of the Act, 24 P.S. § 6504(a) (granting the Board the power and duty to approve or disapprove the initial and renewal licensure of schools); Section 6(a) of the Act, 24 P.S. § 6506(a) (stating that a private school requiring licensure shall not operate unless the school has obtained a license issued in the prescribed manner and form); Section 7 of the Act, 24 P.S. § 6507 (providing that before any license is issued to a private school, a verified application shall be made, in writing, on a form prepared and furnished by the department); 22 Pa.Code § 73.51 (relating to the general requirements for filing an application).

The Act, however, provides several exemptions from inclusion within the definition of the term "private licensed school." Specifically excluded from the definition are:

[Private academic schools]; *a school maintained or a class conducted* for training for the vocation of homemaking or *to give training in public and other service occupations;* a barber school . . . a private tutorial school . . . [and degree-granting institutions].

Section 2 of the Act, 24 P.S. § 6502 (emphasis added.)[3]

---

**3.** Most of the exempt schools or programs listed in Section 6502 are regulated by Commonwealth boards of review by other statutes. For example, the Private Academic Schools Act, the Act of January 28, 1988, P.L. 24, *as amended,* 24 P.S. §§ 6701–21, regulates "private academic schools."

In addition, the Commonwealth requires licensure for numerous other professions and occupations including, but not limited to accountants, architects, dentists, engineers, nurses, pawnbrokers, pharmacists, funeral directors, barbers, schools of cosmetology, chiropractors, and auctioneers to name a few. *See generally* 63 P.S. §§ 9.1–2112.

On appeal to this Court,[4] Blanco contends that the Board erred because it had not promulgated any regulation that defined the statutory phrase "other service occupations," after it found that Blanco's classes met the definition of a "private licensed school." Blanco maintains that his bartending classes do not require licensure because they offer occupational training in a "service related occupation." Blanco, appealing *pro se*, essentially asserts that the Act's use of the term "other service occupations" is void for vagueness.

The Board, on the other hand, takes a very different position arguing that Blanco's center is within the definition of a "private licensed school" because it was a class operated for profit, and was conducted for the purpose of training people in a recognized occupation: "bartending" which is "an occupation in the skilled trades, industry, or business." The Board concedes that, while the term "other service occupations" qualifying as an exemption has not been defined by regulation, it acted within its statutory authority because, under a grant of discretionary power from the legislature, it developed a reasonable procedure by relying on federal lists of occupational titles to decide whether an occupational training program requires licensure. In other words, if the particular occupation is on the federal list, it is an occupation that requires licensure unless otherwise exempted. The Board states that rather than institute specific regulations itself, it relied upon the expertise of its Board members,[5] along with the federal

4. In reviewing Blanco's allegations, we recognize that our scope of review from an agency adjudication is limited to determining whether necessary findings are supported by substantial evidence, an error of law was committed, or whether any constitutional rights have been violated. Section 704 of the Law, 2 Pa.C.S. § 704; *see Guers Dairy, Inc. v. Milk Marketing Board*, 90 Pa.Commonwealth Ct. 268, 494 A.2d 888 (1985).

5. The Act provides that Board members come from a variety of different schools. Section 3(a) of the Act states in relevant part:

The Board shall consist of 15 members, 14 of whom shall be appointed by the secretary. Three members shall represent private licensed schools providing instruction in business and commercial pursuits, three members shall represent private licensed schools providing instruction in trades or technologies, three members shall represent private licensed schools providing correspondence or home-study

lists, to enable it to identify and regulate schools that must meet licensure requirements. The Board states that we should defer to the procedures used and affirm its decision that bartending training programs such as Blanco's must be licensed.

The Board made the following findings of fact and conclusions of law:

### Findings of Fact

1. [Blanco] . . . is an entity not licensed by the [Board].

2. Blanco provided classes or courses in bartender training during 1991 at locations in Allentown and Bloomsburg.

3. Blanco advertised its courses or classes in Pennsylvania newspapers as a 'Bartender Training Course.'

4. Blanco did not limit enrollment to individuals who were seeking the skills needed to be employed as bartenders. . . .

5. Blanco charges a total of $198.00 for its bartender training.

6. Blanco's course involved 20 hours of training, including hands on practice, in glassware identification, drink recipes, mixing drinks, using garnishes and setting up a speed bar.

7. Enrollees received a course booklet entitled 'Professional Bartenders Training Center.'

8. This booklet uses the term 'customer,' which implies a vocational, rather than avocational, purpose for the course.

9. At the completion of Blanco's course all students receive a certificate that they attended the bartender training course.

. . . .

11. Bartending is a recognized occupation.

. . . .

18. *Neither the Board nor Board staff have defined the statutory phrase 'other service occupations.'*

instruction and five members shall be representative of the general public having no current affiliation with private licensed schools. . . .
24 P.S. § 6503(a).

## Conclusions of Law

1. The courses which Blanco previously conducted were intended, albeit not solely, to train individuals in the recognized occupation of bartending.

2. Blanco's Bartender Training Course falls within the definition of a 'private licensed school' found in the Private Licensed Schools Act because it was a class operated for profit and to prepare persons for occupations in bartending.

3. By providing classes without licensure, Blanco was in violation of the Private Licensed Schools Act.

4. *Bartending is not an 'other service occupation' within the contemplations of the Act.* (Emphasis added.)

Board opinion at 2–4 (citations omitted).

In the process of concluding that Blanco should obtain a license, the Board elected neither to define the occupational fields subject to licensure, nor those schools that are exempt under the category "other service occupation;" yet it determined that Blanco's school of bartending was not an "other service occupation." The Board came by this determination by referring to bulletins from various federal government agencies, and used these lists to provide guidance for determining whether a given training program is "occupational." [6]

If an occupation is not on one of these federal lists, then the training program is considered exempt as an "other service occupation" by the Board. If the program is on the list, however, it is subject to licensure, unless otherwise specifically exempt. The Board admittedly has consistently relied upon these federal lists, has promulgated no regulations of its own, and used the federal lists as the sole basis to conclude that

6. Although unclear from the Board's brief exactly how many federal publications it uses, in the present case the federal publications included at least the *Dictionary of Occupational Titles,* a publication by the United States Department of Labor (Fourth Ed.1977), and *A Classification of Instructional Programs,* a publication by the United States Department of Education (1985).

Blanco's operation met the statutory criteria for licensure because "Blanco's Professional Bartenders Training Center was listed as an unemployment compensation occupational field in both bulletins." (Board's Brief at 8).[7]

■■■ Addressing Blanco's void for vagueness challenge, we begin by noting that it is well settled that:

Vague statutes offend the constitution because they may (1) trap the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what is prohibited so that he may act accordingly; or (2) result in arbitrary and discriminatory enforcement in the absence of explicit guidelines for their application.... [A] legislative enactment will be deemed invalid 'only if it is so vague and indefinite that courts are unable to determine with any reasonable degree of certainty the intent of the legislative body or so incomplete, conflicting and inconsistent in its provision that it cannot be executed.'

*Pennsylvania Builders Association v. Department of Revenue*, 122 Pa.Commonwealth Ct. 493, 506, 552 A.2d 730, 737

7. The bulletin *Classification of Instructional Programs* provides in relevant part:

12. Consumer, Personal and Miscellaneous Services. A summary of instructional programs that prepare individuals to provide a variety of services to individual consumers as well as to organizations such as businesses and industries.

....

12.02 Entertainment Services. *A group of instructional programs that prepare individuals to perform a variety of services* related to the sale of food, beverages, and entertainment.

12.0202 Bartending. An instructional program that prepares individuals to mix and serve alcoholic and nonalcoholic drinks to patrons of a bar or other drinking establishment, following standard recipes. (Emphasis added.)

In addition, the *Dictionary of Occupational Titles* describes the occupation of "bartender" as:

312.474–010 BARTENDER (hotel & rest.) bar attendant; barkeeper. Mixes and serves alcoholic and non-alcoholic drinks to patrons of bar, following standard recipes: ... Collects money for drinks served. Orders or requisitions liquors and supplies. Places bottled goods and glasses to make attractive display.... When tending service bar, may be designated as SERVICE BARTENDER (hotel & rest.).

(1989), *aff'd per curiam,* 524 Pa. 134, 569 A.2d 928 (1990) (citations omitted). In addition, as our Supreme Court in *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 292 A.2d 277 (1972), has noted that:

> Neither the legislatively chosen agency ... nor the courts may imagine rules or standards for conduct not properly adopted and announced in advance. To hold otherwise is to substitute for either statute or rule a purely subjective criterion which may reflect merely the personal or professional views of individual members of the Board.

*Id.* at 200, 292 A.2d at 282.[8]

 Based on the above, we conclude that Section 6502 of the Act as applied in this instance is void for vagueness because without proper regulations defining the term "other service occupations," Blanco did not have the reasonable opportunity to know that his bartending classes needed a license. Blanco's adjudication consisted of a procedure that was based solely on an *ad hoc* determination involving the Board's own expertise and federal lists which do not supply any relevant information to determine whether bartending classes are a service occupation. Here the Board, concluding that Blanco's bartending program constituted a recognized occupation, fails to recognize that the Act exempts many schools that operate for profit and prepare people for recognized occupations.[9] Moreover, while the scope of the Act expressly limits the Board's power to license *certain* occupations, it provides incomplete guidance on its face as to what those occupations are. We believe that a determination that bartending classes such

**8.** *See also* 1 Kenneth C. Davis, Administrative Law Treatise § 3:9 (2d ed. 1978), where in his discussion of judicially mandated administrative *rulemaking,* Davis observes that:

> The court may permit the agency to do its rulemaking under the vague statutory standard, but the court may forbid the agency to make individual determinations without first doing what it reasonably can do, by rulemaking or otherwise, to give specific meaning to the vague statutory standard.

**9.** *See supra* note 7.

as the one operated by Blanco are required to be licensed may only be made by statute or regulation. Given the incomplete guidance provided by Section 6502 of the Act, the exercise of the Board's power on a case-by-case basis not based on promulgated regulations suffers from constitutional infirmities of vagueness. To avoid a challenge on grounds of vagueness the Board must promulgate regulations defining, or listing, what occupations are included within the phrase "other service occupation" as used in the Act. *See Pennsylvania Medical Society v. Foster,* 137 Pa.Commonwealth Ct. 192, 585 A.2d 595 (1991) (stating that properly promulgated regulations can cure vagueness problems).[10]

Reversed.

## ORDER

NOW, September 13, 1993, the order of the State Board of Private Licensed Schools in the above-captioned matter is hereby reversed.

---

10. Blanco maintains that he represents a class who, by statutory definition, is exempt. We decline the invitation to go this far. However, we note that while reliance on federal publications may prove useful in assessing the occupational nature of a training program, it does not provide relevant or sufficient information to decide the essential question: does Blanco's bartending program constitute training for a "service occupation." Our review reveals no relationship between the information contained in the federal publications and the Board's conclusion that Blanco's bartending program does not constitute an "other service occupation" as used in the Act.