CIRILLO, Judge,
dissenting:
I respectfully dissent. While I agree that the majority’s interpretation of the phrase “was charged” is one logical construction of 35 P.S. § 780-117(1)(vi) (hereinafter the “Probation Statute”), I believe that the phrase also imports the countervailing view that the legislature intended to provide drug dependent individuals, never before charged with drug dealing, with the opportunity to receive probation without verdict. Because I am unable to reconcile these diametric interpretations, I would strike down the Probation Statute as unconstitutionally vague.
In August of 1992, the legislature amended the Probation Statute in an effort to help rehabilitate first-time drug users.[1] To this end, the General Assembly set forth a statutory scheme in which first-time drug users have the opportunity to receive probation without verdict in lieu of a possible criminal conviction. Once such probation is authorized, the offender is free to embark on a course of rehabilitative treatment without the stigma of a criminal record. The Probation Statute, however, expressly exempts from eligibility six categories of offenders. The Probation Statute provides that:
(1) The following persons shall be ineligible for probation without verdict:
(i) Any person who has previously been convicted of an offense under this act or similar act of the United States or any other state.
*289 (ii) Any person who has been convicted of a misdemean- or or felony in this Commonwealth or an equivalent crime under the laws of any other state.
(iii) Any person who has been placed on Accelerated Rehabilitative Disposition where the person was charged with a violation of this act or the commission of a misdemeanor or felony in this Commonwealth.
(iv) Any person who is charged with or has pleaded guilty or nolo contendere to multiple offenses which are based on separate conduct or arise from separate criminal episodes such that those offenses could be tried separately in accordance with 18 Pa.C.S. § 110 (relating to when prosecution barred by former prosecution for different offense).
(v) Any person who is a dangerous juvenile offender under 42 Pa.C.S. § 6302 (relating to definitions) or who was adjudicated delinquent for conduct which would constitute a violation of clause (30) or (37) of subsection (a) of section 13 of this act.
(vi) Any person who was charged with violating clause (14), (30) or (37) of subsection (a) of section 13 of this act.[2]
35 P.S. § 780-117 (emphasis added).
In the case at hand, it is our narrow task to determine the precise meaning of the phrase “was charged” as it appears in subsection six of the Probation Statute. The majority contends that the phrase “was charged” clearly and unambiguously refers to a defendant “currently” charged with violating 35 P.S. § 780-113(14), (30), or (37) and steadfastly rejects the alternative reading that would exempt a defendant “currently” charged, only if he or she was previously charged in an earlier action. Although the majority’s view is steeped in logic, I *290 believe that the Probation Statute’s alternative reading is more compelling. In any event, because both constructions of subsection six of the Probation Statute are viable, I would strike the provision as unconstitutionally vague.
The majority interprets the phrase “was charged” to mean the “current” charges for which the defendant is being sentenced. In so ruling, the majority relies both on the principles of statutory construction and on its characterization of the legislative intent behind the Probation Statute.
The majority’s chief statutory construction argument is rooted in the axiom that, whenever possible, we must interpret a statute according to the plain meaning of its language. 1 Pa.C.S.A. § 1903;[3] Commonwealth v. Bell, 512 Pa. 334, 339, 516 A.2d 1172, 1175 (1986). In other words, if the language of a statute is clear and free from ambiguity, we are required to interpret the statute according to the common and accepted usage of the terms provided by the legislature. Bell, 512 Pa. at 340, 516 A.2d at 1175.
Applying this rule to the Probation Statute, the majority concludes that the phrase “was charged” imports a clear and unambiguous meaning. To the majority, the phrase “was charged” includes, by definition, the charges to which a defendant pled guilty or nolo contendere in the current proceeding. This is so, the majority continues, because a defendant “is charged” with a crime only “before” a case has been disposed of and by necessity, a defendant “was charged” with a crime only “after” he or she is convicted, is acquitted, or pleads guilty or nolo contendere. Accordingly, as Berryman “was charged” with violating 35 Pa.C.S.A. § 780-113(30) and pled nolo contendere to that charge, the majority concludes that he was ineligible to receive probation without verdict.
Additionally, the majority relies upon the legislature’s inconsistent use of verbiage and verb tense to support its interpretation. Particularly, the majority looks to the general rule that when the legislature changes either the language or the *291 verb tenses employed within a particular provision, we presume that it knew the meaning and significance of the language it used. Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); see also Novicki v. O’Mara, 280 Pa. 411, 416, 124 A. 672, 673 (1924) (“A change of language in separate provisions of a statute is prima facie evidence of a change of intent.”).
Utilizing this general rule, the majority avers that the phrases “has been” and “has previously been” in subsections (i), (ii), and (iii) are used by the legislature to connote separate, prior occurrences. Extrapolating forward, the majority argues that had the legislature intended “was charged” to mean separate, prior charges, it would have employed a consistent scheme and, necessarily, would have used the words “has been charged.” Accordingly, the majority concludes that the different choice of words shows the legislature’s intent to exclude those currently charged with violations of 35 P.S. § 780-113(14), (30), or (37) from receiving probation without verdict.
In its final argument, the majority claims that only its interpretation of the Probation Statute keeps with the intent of the legislature. In so holding, the majority relies on the tenet that where the language of a statute is ambiguous, we are instructed to ascertain and effectuate the intent of the legislature, to, if at all possible, give effect to all of a statute’s provisions, and to presume the General Assembly did not intend a result which is either absurd, impossible to execute, or unreasonable. 1 Pa.C.S.A. § 1921(a); 1 Pa.C.S.A. § 1922(b).
The majority asserts that an interpretation which defines the phrase “was charged” to mean “charged in an earlier proceeding” would produce the absurd and unreasonable result of “punishing the innocent” and “rewarding the guilty.” This is the case, the majority states, because, applying the principle that we must give effect to all of a statute’s provisions, the only way a defendant charged with violating 35 P.S. § 780-113(14), (30), or (37) could receive probation without *292 verdict is to have been charged and acquitted in an earlier action.[4]
Thus, the majority concludes that considering both the principles of statutory construction and its determination of legislative intent, the only logical interpretation is that the Probation Statute exempts defendants, currently charged with the relevant offenses, from receiving probation without verdict. In my view, if one accepts the majority’s inferences as to the intent of the legislature and considers solely the majority’s statutory construction analysis, then the construction the majority sets forth is a reasonable one. I am not convinced, however, that the legislature intended the result announced by the majority, and I believe this interpretation is borne out by an equally compelling statutory construction analysis. As such, I conclude that the Probation Statute should be interpreted to enable one currently charged with the relevant offenses to receive probation without verdict, unless he or she had been previously charged with the enumerated offenses.
In reaching my disparate interpretation of the Probation Statute, I rely on the principles of statutory construction, the intent of the General Assembly, and on the inveterate principle that when a criminal statute is ambiguously drafted, the ambiguity should be resolved in favor of the accused.
. While I agree with the majority that the change in verb tenses and construction throughout the Probation Statute is indicative of a change of legislative intent, I believe that this change is illustrative of the view that the phrase “was charged” cannot be used interchangeably with the phrase “currently charged.” Examining the words used in the Probation Statute in their grammatical context, it is clear that the General Assembly chose to employ a variety of tenses in describing the relationship of a defendant to the legal system.
*293 Sections (i), (ii), and (iii) all use the present-perfect tense and describe a defendant who “has been” or “has previously been” convicted or placed on accelerated rehabilitative disposition (hereinafter “ARD”). All three clearly refer to prior adjudications. Section (v) employs both the present and past tenses and depicts a defendant either “who is a dangerous juvenile offender,” “or was adjudicated delinquent.” Most revealingly, however, section (iv) uses both the present tense to describe someone “who is charged with ... multiple offenses” and the past tense to describe someone “has pleaded guilty or nolo contendere to multiple offenses.” (Emphases added).
In codifying this scheme, the General Assembly used the present, past, and present-perfect tenses to describe under what circumstances a defendant will be ineligible for probation without verdict. Because we are to assume that the legislature knew the significance and the meaning of the language it employed, Dickerson, supra, and because we presume that the legislative intent changes with a change in verb tense, Novicia, supra, I believe that the plainest meaning of the phrase “was charged” is that, a defendant who “was charged” in a prior proceeding with violating 35 P.S. § 780-113(14), (30), or (37), is ineligible for probation without verdict. If the General Assembly had intended otherwise, it would have employed the same language it had in section (i) or (iv); that is, either “has been charged” or “is charged.”
Turning next to the intent of the General Assembly, I believe that the legislature intended drug users, charged with a first offense of possession with intent to deliver a controlled substance, to receive probation without verdict. In discerning legislative intent, we are instructed to consider such factors as the circumstances under which the statute was enacted, the object to be attained, the former law if any, the contemporaneous legislative history, and the consequences of a perceived interpretation. 1 Pa.C.S. § 1921(c).[5]
*294 The Probation Statute as currently codified, .replaced the first paragraph of the 1972 version of section 17 (hereinafter the “Original Probation Statute”). The Original Probation Statute provided that:
A person may be entitled to probation without verdict under the following circumstances:
(1) A person who has not previously been convicted of an offense under this act or a similar act of the United States or any other state, is eligible for probation without verdict if he pleads nolo contendere or guilty to, or is found guilty of, any nonviolent offense under this act.
Probation without verdict shall not be available to any person who is charged with violating clause (30) of subsection (a) of section 13 of this act and who is not himself a drug abuser and who does not prove the fact of such drug abuse to the satisfaction of the court.
35 P.S. § 780-117 (1972) (emphasis added).
The unambiguous meaning of the Original Probation Statute was, therefore, that a drug abuser charged under clause (30) of section 13 with possession with the intent to deliver was eligible for probation without verdict.
When the amended version of section 17 was adopted, Representative O’Brian, the sponsor of the Probation Statute, described the legislative intent behind the section as “a valuable tool to end the clear abuse of section 17 dispositions and would help put an end to the frustration of the plain legislative purpose; that is, to help rehabilitate first-time drug users.” *295 1992 Pa.Legis.Journal — House (January 29, 1992). Representative O’Brian also said that the amendment was designed to exclude persons with prior convictions under the Drug Act from probation without verdict and that “section 17 should not be available for repeat drug offenders.” Additionally, Representative O’Brian went through each of the first five exclusions from section 17, iterating the reasons for the exclusion; the legislator, however, made no mention of the sixth exclusion, the one at issue here. The amendments to section 17 passed the state House 196 to O.
Thus, when looking at the former law and at the statements on the floor of the House at the time the bill was passed, it would appear that the legislature intended to create a statutory scheme which allows those caught in the web of drug dependency a single opportunity to extricate themselves without the lifelong stigma of a conviction. Furthermore, I believe that this overarching goal of rehabilitation was designed to extend to drug dependent individuals who are currently charged with a drug dealing offense. In this manner, the legislature could relieve these individuals of the burdens concomitant with criminal convictions and sentences, and not condemn them to the fate of Sisyphus[6] without giving them at least one opportunity to recover from their addictions.
In response to this telling argument, the majority seeks refuge behind a clever, yet misleading expression; that is, that under this view, the legislature would produce the absurd result of “punishing the innocent” and “rewarding the guilty.” Despite the convincing sound of this argument, upon close scrutiny it does not ring true. Under the majority’s view, every drug dependent person, charged with a drug dealing offense, is necessarily punished, and no person so charged is able to receive the care and rehabilitation he or she so desperately needs. This interpretation runs counter to the express intent of the General Assembly; that is, to help rehabilitate first time drug users, not to sentence them to *296 automatic terms in prison. To hold otherwise would create the sort of section 17 disposition the Probation Statute was enacted to prevent.
I believe, therefore, that the better and more likely interpretation of the intent of the legislature in enacting the Probation Statute, is that “true” first-time drug abusers should be given their shot at rehabilitation. To this end, the General Assembly requires that this actually be the accused’s first drug dealing offense. If the defendant was previously convicted[7] or placed in ARD,[8] he or she is not able to receive probation without verdict. If the defendant deals drugs, but is not dependent upon them, he or she is also ineligible for probation without verdict.[9] Likewise, if the accused has been arrested and charged with the dealing of controlled substances on a previous occasion, he or she is unable to receive probation without verdict.
Lastly, I believe that the fundamental principle that any ambiguities in criminal statutes are to be resolved in the accused’s favor, militates in favor of this construction of the Probation Statute. It is axiomatic that:
When a criminal statute, is susceptible of two constructions, both reasonable, it is not the construction that is supported. by the greater reason that is to prevail but the one that operates in favor of the defendant’s liberty, and if there is doubt, the defendant must be given the benefit of the doubt.
Commonwealth v. Eyster, 401 Pa.Super. 477, 488, 585 A.2d 1027, 1033 (1991); see Commonwealth v. Jones, 432 Pa.Super. 97, 637 A.2d 1001 (1994); Commonwealth v. Smith, 333 Pa.Super. 155, 481 A.2d 1352 (1984); see also Scarborough v. United *297 States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (holding that the ambit of criminal statutes should be resolved in favor of lenity). Applying this basic precept to the Probation Statute, it is clear that we are required to resolve the ambiguity implicit in the phrase “was charged” in the defendants’ favor. This is so, moreover, even if one were to find the majority’s interpretation more likely.
With these two diametric interpretations of the Probation Statute in mind, I turn my attention to the practical consequence of such varied delineations. Although I believe that my construction is the more logical, I am nonetheless constrained to recognize the potential validity of the majority’s position. In my view, neither interpretation strains the ordinary meaning of the language used, nor represents an unsupported legislative intent. In such cases, I submit, the statutory scheme or provision at issue must be examined under the constitutional microscope of the void-for-vagueness doctrine.[10]
Fundamental to our system of governance is the sacrosanct principle of due process of law, embodied in the Fifth and Fourteenth Amendments to the Constitution of the United States.[11] Although by no means a new concept,[12] the inclusion of a due process requirement within our constitution sends the inescapable message that the fundamental rights of life, liberty, and property are extended to all citizens of this nation. Due process affords all citizens the right to freedom from governmental and societal intrusions without the right to be *298 heard before an unbiased tribunal. The touchstone of due process is the protection of the individual from the arbitrary-workings of the government. Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975-76, 41 L.Ed.2d 935 (1974).
Springing from these basic tenets comes the enduring constitutional principle of the void-for-vagueness doctrine. Under this doctrine, “an enactment is void-for-vagueness if its prohibitions are not clearly defined.” Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). “As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). See also Posters ‘N’ Things, Ltd. v. United States, — U.S. —, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994); Hoffman Estates v. Flipside, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Connolly v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Commonwealth v. Parker White Metal Co., 512 Pa. 74, 515 A.2d 1358 (1986); Commonwealth v. Heinbaugh, 467 Pa. 1, 354 A.2d 244 (1976); Commonwealth v. Leib, 403 Pa.Super. 223, 588 A.2d 922 (1991). Absent such standards, a statute is unconstitutionally vague.
Traditionally, the void-for-vagueness doctrine is applied to combat three distinct statutory infirmities: (1) where a statute fails to provide adequate notice to the public as to the proscribed conduct; (2) where a statute fails to provide sufficient guidance to prosecutors and police as to the means of enforcement; and (3) where a statute fails to provide the judiciary with sufficient guidance as to the statute’s interpretation.
The most common application of the void-for-vagueness doctrine involves challenges to the adequacy of the notice a statute provides to the public. Under this aspect of the doctrine, we require that a penal statute “give reasonable notice of the conduct which it proscribes to a person charged *299 with violating its interdiction.” Commonwealth v. Mikulan, 504 Pa. 244, 251, 470 A.2d 1339, 1343 (1983) (citing Commonwealth v. Heinbaugh, 467 Pa. 1, 5, 354 A.2d 244, 245 (1976)). At the heart of this imperative is the notion that “no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.” Pennsylvania State Bd. of Pharmacy v. Cohen, 448 Pa. 189, 200, 292 A.2d 277, 282 (1972) (citing Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939)).
This requirement does not import, however, that criminal statutes are “to be tested against the paradigms of draftsmanship. Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct.” Mikulan, 504 Pa. at 251, 470 A.2d at 1343. Furthermore, in making such a determination, we are ever mindful of the distinction that “[a] statute may be ‘vague’ in the sense that it contains no ascertainable standard of conduct, or it may be ‘vague’ in the sense that the ascertainable standard of conduct may or may not include certain types of conduct.” Commonwealth v. Mack, 467 Pa. 613, 616, 359 A.2d 770, 772 (1976) (cited with approval by Commonwealth v. Adamo, 431 Pa.Super. 529, 637 A.2d 302 (1994)). “If the statute contains no standard of conduct ... [it] will be declared unconstitutionally ‘vague’ without regard to the particular conduct of the individual challenging the statute.” Id. (citing United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 319-20, 46 L.Ed.2d 228 (1975)). If, on the other hand, the statute encompasses an ascertainable standard, “the vagueness issue may be finally determined only with reference to the conduct of the person challenging the statute.” Id.
Cases determining whether a statute is unconstitutionally vague for providing inadequate notice to the public are legion. In Cohen, supra, the Pennsylvania Supreme Court considered whether the State Board of Pharmacy’s (“SBP”) interpretation of 63 P.S. § 390-5(a) of the Pharmacy Act[13] would render the *300 statute unconstitutionally vague. Specifically, the SBP argued that despite the 13 enumerated prohibitions constituting “grossly unprofessional conduct,” it could nonetheless exercise its discretion and make its own judgment as to whether a pharmacist’s conduct rose to the level of gross unprofessional-ism. Cohen, 448 Pa. at 196, 292 A.2d at 280.
The Supreme Court disagreed, finding that such an interpretation would render the statute unconstitutionally vague. In reaching this decision, the Court was cognizant of the fact that under the SBP’s construction, the pharmacists of this Commonwealth would have no ascertainable standards as to what sort of conduct the State enjoined. As such, the Court concluded that the lack of standards would effectively deprive an individual of life, liberty, and property without due process of law. Id. at 198-200, 292 A.2d at 282.
In Mikulan, supra, the Pennsylvania Supreme Court responded to a constitutional challenge to 75 Pa.C.S.A. § 3731(a)(4). Section 3731(a)(4) provided that a “person shall not drive, operate or be in actual control of the movement of any motor vehicle while: ... the amount of alcohol by weight in the blood of the person is 0.10% or greater.” Mikulan, charged with violation of this statute, argued that it was unconstitutionally vague “because a person of ordinary intelligence performing the lawful act of consuming alcoholic beverages prior to driving has no reasonable way to ascertain beforehand when his blood alcohol level is about to reach the prohibited range.” Mikulan, 504 Pa. at 251, 470 A.2d at 1343. Thus, according to Mikulan, an individual was left to guess whether his/her conduct was permitted or proscribed.
In rejecting the appellant’s arguments, the Court focused primarily on the practical aspects of the statute. In the Court’s view, the legislature squarely placed the risk of poor judgment upon the individual who had the choice, the drinking driver, and not upon the innocent victim of his/her erroneous judgment. Id. at 252, 470 A.2d at 1344. The Court reasoned that in placing this burden upon those who choose to imbibe *301 alcoholic beverages, the legislature provided clear notice that driving was not permitted following episodes of immoderate drinking. Id. Despite the fact that it is impossible to predict with mathematical certainty when one’s blood alcohol level exceeds the legal limits, the Court found that the statute fully informed each individual of the risks concomitant with drinking and driving and the penalties associated with the assumption of that risk. Id. Thus, the Court held that the statute was not unconstitutionally vague.
In Pennsylvania Bar Assoc. v. Commonwealth, 147 Pa. Commw. 351, 607 A.2d 850 (1992), the Pennsylvania Bar Association (hereinafter “PBA”) challenged, inter alia, the constitutionality of 75 Pa.C.S.A. § 1822, the so-called Motor Vehicle Financial Responsibility Law. The challenged provision required insurance carriers to report all “suspected” fraudulent claims to the Index Bureau and to include within these reports the names of all claimants, medical providers, repair shops, insurance adjusters, and attorneys representing claimants. 75 Pa.C.S.A. § 1822. Specifically, the PBA claimed that the statute was unconstitutionally vague in that its members were unable to determine what specific conduct is required to be reported and were, thus, unable to conform their behavior accordingly.
The Commonwealth Court agreed and struck the provisions in question as unconstitutionally vague. In making this determination, the court concluded that the lack of legislative definition of the word “suspected” would necessarily lead to arbitrary reporting and would prevent attorneys of ordinary intelligence from knowing what conduct is prohibited and from, therefore, acting in accordance with the strictures of the law. Id. at 369, 607 A.2d at 859.
Most recently, in Commonwealth v. Adamo, 431 Pa.Super. 529, 637 A.2d 302 (1994), this court had pause to consider whether 18 Pa.C.S.A. § 2910 was unconstitutionally vague. This statute made it unlawful for one to lure a child into a motor vehicle without the express or implied consent of the child’s parent or guardian. Adamo, who was arrested and then convicted for violating this statute, claimed on appeal *302 that the statute should be held unconstitutionally vague in that it did not give notice with respect to the following: 1) as to the age of the child to which the law applies; 2) as to a precise definition of the term “lure”; and 3) as to what circumstances give rise to “implied consent” by the child’s parents. Id. at 536-37, 637 A.2d at 306. In upholding the constitutionality of the statute, we determined that the law contained an ascertained standard of conduct and that, based upon the record, Adamo himself understood that his behavior was proscribed.[14] We concluded, therefore, that when a law has ascertainable standards and when a criminal defendant admittedly understands his conduct to be violative of those standards, a vagueness attack must fail, because, necessarily, the individual had notice that his/her conduct was unlawful. Id.
Although the void-for-vagueness doctrine focuses both on the quantum of notice a statute provides to the public and the degree to which the statute provides standards for governmental enforcement and interpretation, the United States Supreme Court has stated that the most important aspect is the requirement that the legislature establish minimum guidelines to govern law enforcement. Kolender, 461 U.S. at 357-58, 103 S.Ct. at 1858-59. This is so because “[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit a ‘standardless sweep [that] allows policemen, prosecutors, and juries to pursue their own personal predilections.’ ” Id. (citing Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)). To withstand constitutional scrutiny under the vagueness doctrine, therefore, a statute must provide clear and explicit guidelines for those who are charged with law enforcement duties. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972). To require anything less would open the door to arbitrary and discriminatory statutory application, offensive to our Constitution. Id. at 109, 92 S.Ct. at 2299.
In Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the United States Supreme Court consid *303 ered whether a California loitering statute, Cal.Penal Code § 647(e) (West 1970), was unconstitutionally vague as interpreted by the courts.[15] Specifically at issue was the California appellate courts’ construction of the statute to require “that an individual provide ‘credible and reliable’ identification when requested by a police officer who has reasonable suspicion of criminal activity to justify a Terry detention.” Id. at 355-56, 103 S.Ct. at 1857. Moreover, “credible and reliable” identification was defined by the California Court of Appeals as “identification carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself.” Id. Additionally, a suspect was required to “account for his presence” when asked to do so by law enforcement officers. Id.
After carefully construing the language of the statute, the United States Supreme Court embarked on a void-for-vagueness analysis. In the course of its opinion, the Court indicated that the statute contained no standard for determining what a suspect had to do in order to satisfy a “credible and reliable” identification. Id. at 358, 103 S.Ct. at 1858-59. The Court further found that the law impermissibly vested, within the whims of any police officer, complete discretion to determine whether an individual has complied with the statute and is able to go on his or her way in the absence of probable cause to arrest. Id. Such a law, the Court concluded, despite the need for strengthened law enforcement, “furnishes a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure, ... and confers on the police a virtually unrestrained power to arrest and charge persons with a violation.” Id. at 360, 103 S.Ct. at 1860 (citing Papachristou, *304 405 U.S. at 170, 92 S.Ct. at 847 and Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974)). Accordingly, the Court struck the statute as unconstitutionally vague.
In Orwell Township Supervisors v. Jewett, 132 Pa.Commw. 30, 571 A.2d 1100 (1990), Orwell Township challenged the trial court’s finding that the Orwell Township Junkyard and Refuse Ordinance (hereinafter the “Junkyard Law”), 53 P.S. § 65758,[16] was unconstitutionally vague. Specifically, Orwell Township claimed, that although the Junkyard Law enabled the Township to refuse to issue a junkyard license solely for aesthetic reasons, the provision was not so vague as to be rendered unconstitutional. Id. at 31, 571 A.2d at 1101.
In rejecting the Township’s argument, the Commonwealth Court focused primarily on the Junkyard Law’s decided lack of qualifications as to its “aesthetic” requirement. The court reasoned that this lack of description would leave the statute’s “interpretation, administration, and enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the municipal legislative body----” Id. at 36, 571 A.2d at 1103. Because such a statute is by definition incapable of uniform and consistent application, the court struck the Junkyard Law as unconstitutionally vague.
Finally, in Blanco v. Board of Private Licensed Schools, 158 Pa.Commw. 411, 631 A.2d 1076 (1993), Andrew Blanco, the owner of a bartending school, challenged a determination of .the State Board of Private Licensed Schools (hereinafter “Board”) that his school was subject to the State licensing requirements per 24 P.S. §§ 6501-6518 (hereinafter “Licensing Act”). The Licensing Act provided that the Board’s power *305 to license is limited to “private licensed schools.” 24 P.S. § 6502. Private licensed schools were defined as:
A school or classes operated for profit or tuition that provides resident instruction to prepare an individual to pursue an occupation in the skilled trades....
Id. If a school meets this definition, then in order to operate in Pennsylvania, it must be licensed by the Board. The Licensing Act, however, provided several exemptions from inclusion within the definition of “private licensed school.” Id. at 413, 631 A.2d at 1078. These exemptions included “a school maintained or a class conducted for training for the vocation of homemaking or to give training in public and other service occupations.... ” Id. (emphasis added).
In challenging the Board’s determination that his school was subject to this Commonwealth’s licensing requirements, Blanco claimed that the Licensing Act was void-for-vagueness. More particularly, Blanco argued that the Licensing Act was unconstitutionally vague because it did not provide explicit standards to enable the Board to interpret the phrase “other service occupations.” Id. at 415, 631 A.2d at 1078-79.
The Commonwealth Court agreed with Blanco’s contentions and held that the Licensing Act was unconstitutionally vague. In reaching this conclusion, the court stated that the Licensing Act provided such incomplete guidance as to the meaning of the phrase “other service occupations,” that, in order to determine which schools were exempt from State licensing requirements, the Board was forced to substitute the purely subjective criteria of individual Board members in place of a statutorily mandated standard. Id. at 417-19, 631 A.2d at 1080. The court concluded that without promulgated legislative regulations defining or listing what occupations are included within the phrase “other service occupations,” the statute must be held unconstitutionally vague. Id.
The final application of the void-for-vagueness is the requirement that a statute provide explicit standards for judicial interpretation. A law is offensive to the traditional notions of due process if it fails to state with sufficient clarity the *306 consequences of its violation (i.e. the sentence to be imposed upon conviction). United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). Just as an individual is entitled to be informed as to what conduct is prohibited by a criminal statute, so too is that individual entitled to be apprised of the penalties imposed for violation thereof.
To pass constitutional muster, therefore, a criminal statute must contain clear sentencing standards that are capable of consistent application by the judiciary; “for without such guidance, the law impermissibly delegates policy matters to judges and juries for resolution on an ad hoc and subjective basis____” Grayned, 408 U.S. at 108-09, 92 S.Ct. at 2299. In other words, “a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves ... judges and juries free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.” Giaccia v. Pennsylvania, 382 U.S. 399, 402-03, 86 S.Ct. 518, 520-21, 15 L.Ed.2d 447 (1966) (citing Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939)).
In Giaccia v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), the United States Supreme Court considered whether a Pennsylvania statute, 19 P.S.A. § 1222 (1860) (hereinafter the “Costs Act”), which authorized a jury to assess costs upon a criminal defendant who had been acquitted, was unconstitutionally vague. In that case, a Pennsylvania grand jury indicted Giaccia and charged him with two counts of wantonly pointing a firearm at another person.[17] Following trial, Giaccia was acquitted on both counts, but the jury nonetheless assessed costs against him in the amount of $230.95, pursuant to the Costs Act. The Costs Act provided, inter alia, that:
in all cases of acquittals by the petit jury on indictments for [offenses other than felonies], the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant shall pay the costs ... and *307 whenever the jury shall determine as aforesaid, that the ... defendant shall pay the costs, the court in which the said determination shall be made shall forthwith pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid, unless he give [sic] security to pay the same within ten days.
Giaccia, 382 U.S. at 400-01, 86 S.Ct. at 519-20 (citing the Costs Act).
On appeal to the United States Supreme Court, Giaccia argued that the Costs Act was unconstitutionally vague in violation of the Fourteenth Amendment’s Due Process Clause, because it authorized “juries to assess costs against acquitted defendants ... without prescribing definite standards to govern the jury’s determination.” Id. at 401, 86 S.Ct. at 520.
In reviewing this challenge, the Supreme Court initially noted that:
one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land. Implicit within this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with the legal standards that courts must enforce.
Id. at 403, 86 S.Ct. at 521. Applying this standard to the Costs Act, the Court was unable to uphold its constitutionality, as the Act contained no standards at all and placed no conditions of any kind upon the jury’s power to impose costs upon an acquitted defendant. Such a law, the Court concluded, failed to meet minimum statutory requirements and was, thus, unconstitutionally vague. Id.
United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), provides another example of the Supreme Court testing the constitutionality of a statute under the judicial interpretation standard of the void-for-vagueness doctrine. At issue in Batchelder was whether the existence of two criminal statutes, with the same substantive elements, but with differing penalties for violation thereof, was unconstitu *308 tionally vague for lack of definite standards for judicial interpretation.
In Batchelder, a federal criminal defendant was convicted of violating 18 U.S.C.S. § 922(h), a provision which forbade a previously convicted felon from receiving a firearm which has travelled in interstate commerce.[18] Upon conviction, the district court sentenced Batchelder to five years imprisonment, as authorized by 18 U.S.C.S. § 924(a).[19]
Batchelder filed a timely appeal to United States Court of Appeals for the Seventh Circuit, alleging that the existence of 18 U.S.C.S. § 1202(a), which covers the- identical conduct proscribed by section 922(h), but which authorizes a maximum sentence of two years imprisonment,[20] rendered section 922(h) unconstitutionally vague. Upon review, the Seventh Circuit employed a traditional statutory construction analysis. After noting that the two statutes prohibited identical conduct, the court imposed the lesser two year sentence under section 1202(a). In so ruling, the Court of Appeals relied on the doctrine that ambiguities in criminal statutes are to be resolved in favor of the defendant. The Court of Appeals also *309 noted that the existence of these two statutes implicated “important constitutional protections,” namely the void-for-vagueness doctrine. Batchelder, 442 U.S. at 117, 99 S.Ct. at 2201.
The United States appealed this decision, alleging that the statutes were unambiguous and, thus, were not unconstitutionally vague. The Supreme Court agreed and reinstated the original five year sentence. In reaching this decision, the Court noted that sentencing provisions pose constitutional questions “if they do not state with sufficient clarity the consequences of violating a given criminal statute.” Id. at 123, 99 S.Ct. at 2204. In the Court’s view, however, as the two statutes at issue unambiguously specified the conduct prohibited and the penalties available upon conviction, the statutes were not constitutionally infirm. Id. Simply because two statutes regulate the same conduct, neither detracts from the notice they provide to the public, nor creates uncertainty in their interpretation by the judiciary. Id. As long as the statutes do not discriminate against a class of people, the statutes do not offend due process, and the choice of under which statute to proceed is within the sound discretion of the prosecution. Accordingly, the Supreme Court determined that the statutes were not unconstitutionally vague.[21]
Cognizant of the severity of the crime to which Berryman entered his plea, I state with unreserved assurance that as *310 citizens of this Commonwealth and this nation they are nonetheless entitled to the full range of protections accorded by the Due Process Clause of the United States Constitution. Due process of law requires that each individual be apprised of prohibited conduct and the penalties for violation thereof. Similarly, due process mandates that a law provide sufficient standards for judicial interpretation. These axioms comprise the foundation for the void-for-vagueness doctrine.
Applying this doctrine to the case at hand produces the inescapable conclusion that the Probation Statute does not comport with constitutional requirements. By definition, the Probation Statute is unconstitutionally vague because it is susceptible to multiple constructions; it neither provides notice of the penalties and programs available to those who are charged under 35 P.S. § 780-113(a)(14), (30), or (37), nor supplies sufficient standards for consistent and accurate judicial interpretation. The very division of this court speaks volumes as to the infirmity of subsection (vi) of the Probation Statute. If nine reasonable judges on this court cannot divine the meaning of this statute, how can an accused ever hope to receive adequate notice and how can a trial court be assured its interpretation is in accordance with the mandate of the General Assembly.
When we chose to don our judicial ermine, we swore an oath to interpret the laws of this Commonwealth and to ensure with unabashed vigilance that the laws comport with the Constitution. In the case at hand, the Probation Statute fails to meet this basic requirement. No matter which view one thinks more likely, the very fact that two interpretations exist prompts this court to action. We should not and cannot countenance a provision capable of such varied construction. I submit, therefore, that it is our responsibility to strike down 35 P.S. 780-117(l)(vi) as unconstitutionally vague.
Finally, even if this court militates in favor of the majority’s construction of the Probation Statute, it is my view that we must permit Raymond Berryman to withdraw his plea of nolo contendere and proceed to trial. This is so because at the *311 time Berryman was awarded probation without verdict, Judge Quinones Alejandro informed Berryman that:
Should I decide that you are not eligible for Section 17 and that for some reason something comes out at the sentencing part and I decide not to consider you for Section 17, you will be allowed to withdraw your plea of no contest and you will be tried before another Judge.
Reproduced Record at 49a-50a. Because Judge Alejandro expressly made Berryman’s nolo contendere plea contingent upon the availability of probation without verdict, we must honor Judge Alejandro’s promise and permit Berryman to withdraw his plea and proceed to trial.
Accordingly, I dissent.

. Speaking on behalf of the Probation Statute, its Sponsor, Representative O'Brian, stated that the Probation Statute "is a valuable tool to end the clear abuse of section 17 dispositions and would help put an end to the frustration of the plain legislative purpose; that is, to help rehabilitate first-time drug users.” 1992 Pa. Legis. Journal — House (January 29, 1992).

. Section 780-113(14) makes it a crime for a member of the medical profession to dispense controlled substances unless it is done in the course of treatment, according to accepted medical practices. 35 P.S. § 780-113(14). Section 780-113(30) makes it a crime to manufacture, deliver, or possess with the intent to manufacture or deliver controlled substances. 35 P.S. § 780-113 (30). Section 780-113(37) makes it a crime to possess more than 30 doses of anabolic steroids, if a the possessor is not a registrant. 35 P.S. § 780-113(37).

. Section 1903 states that "words and phrases shall be construed according to the rules of grammar and according to their common and approved usage.” 1 Pa.C.S.A. § 1903(a).

. This result is reached, according to the majority, because section (i) renders ineligible to receive probation without verdict those persons who have previously been charged and convicted under 35 P.S. § 780-113(14), (30), or (37), and section (iii) excludes persons who had been placed on Accelerated Rehabilitation Disposition after being charged with the relevant offenses.

. Section 1921(c) provides that:
*294 (c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, amohg other matters:
(1) The occasion and the necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S. § 1921(c).

. Of course, Sisyphus was the legendary King of Corinth who was condemned to roll a boulder up a hill in Hades, only to have it roll down each time he neared the top.

. 35 P.S. § 780-117(1)(i) and (ii). Subsection (i) precludes persons previously convicted of drug charges under Title 35 from receiving probation without verdict. Subsection (ii) prohibits individuals previously convicted of a misdemeanor or felony from receiving probation without verdict.

. 35 P.S. § 780-117(1)(iii). Subsection (iii) provides that persons who have been placed on ARD are ineligible for probation without verdict.

. The Probation Statute provides that only individuals who can prove drug dependency are eligible to receive probation without verdict. 35 P.S. § 780-117.

. The majority notes that I have raised this issue sua sponte. The majority concedes, however, that the appellee has raised other constitutional arguments in his appellate brief. In light of the fact that the appellee has challenged, in general, the constitutionality of the statute, and, more importantly, in order to avoid substantial injustice, I find it necessary to address this argument.

. The Fifth Amendment states that: “No person shall ... be deprived of life, liberty, or property without due process of law...." U.S. Const, amend. V. The Fourteenth Amendment states: “nor shall any State deprive any person of life, liberty, or property, without due process of law....” U.S. Const, amend. XIV, § 1.

. The notion that one may not be deprived of life, liberty, or property without due process of law can be traced back to the time of King Solomon, or approximately 971 B.C. See 1 Kings 16-28 (the wisdom of Solomon).

. Section 390-5(a)(9) provides that the SBP has the power to revoke a pharmacist license if the pharmacist is guilty of "grossly unprofessional *300 conduct.” The statute then enumerates 13 prohibitions constituting such conduct. 63 P.S. § 390-5(a)(9).

. The record indicated that Adamo stated to the intended victim that "you can’t tell anybody ... I'll get into trouble. You’re a minor.”

. Section 647(e) provides:
Every person who commits any of the following acts is guilty of disorderly conduct ... (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.
Cal.Penal Code § 647(e) (West 1970).

. The Junkyard Law provides:
Upon receipt of an application by the Board, the Board shall issue a license or shall refuse to issue a license to the person applying therefore, after an examination of the application and taking into consideration the suitability of the property proposed to be used for the purposes of the license, the character of the properties located nearby,' and the effect of the proposed use upon the Township, both economic and aesthetic.
Section 5 of the Orwell Township Junkyard and Refuse Ordinance (emphasis added).

. 18 P.S.A. § 4716. This crime is characterized as a misdemeanor.

. Specifically, the statute provides:
It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year: ...
to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C.S. § 922(h).

. Section 924(a) provides:
Whoever violates any provision of this chapter ... shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall be eligible for parole as the Board of Parole shall determine.
18 U.S.C.S. § 924(a) (emphasis added).

. Section 1202(a) provides:
Any person who—
(1) has been convicted by a court of the United States, or of a State or any political subdivision thereof of a felony ...
and who receives, possesses, or transports in commerce or affecting commerce ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
18 U.S.C.S. § 1202(a) (emphasis added).

. The Pennsylvania Supreme Court expressly adopted this reasoning in Commonwealth v. Parker White Metal Co., 512 Pa. 74, 515 A.2d 1358 (1986). In Parker White, the Court determined that although under 35 P.S. § 6018.-606(a) & (b) the prosecution has discretion to charge a defendant for the commission of the identical crime, with either a summary offense or a third-degree misdemeanor, the statutes provided sufficient notice to the public and provided clear provisions for the judiciary to impose sentence. Thus, the Court determined that the provisions were not unconstitutionally vague.
Query whether such statutes are an unlawful delegation of the legislative power to the executive branch of government, i.e., the police or the District Attorney, as to what statute to use in indicting the defendant? The police or the District Attorney could punish certain persons by indicting them with a misdemeanor rather than a summary offense, and reward their friends or neighbors by indicting them merely with a summary offense.